UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JABBAR COLLINS,                                    :     **FIRST AMENDED**
                                                          **COMPLAINT**
                        Plaintiff,                 :

            -against-                              :     04 Civ *3215 (FB)(LB)*

JONATHAN LIPPMAN, individually, and as            :
Chief Administrative Judge for the New York
City Office of Court Administration; JAMES        :
F. IMPERATRICE, individually, and as Chief
Clerk of the Criminal Term of the Supreme         :
Court, Kings County; and JOHN DOES 1-3,
individually, and as Justices of the Supreme      :
Court, Kings County,

                        Defendants.                :

------------------------------------------------------------X

**RECEIVED**
AUG 2 3 2004
**PRO SE OFFICE**

*Rec'd 8/26/04 by*

Plaintiff JABBAR COLLINS, respectfully alleges the following:

## NATURE OF ACTION

1.    This is a civil action pursuant to the First, Fifth and
Fourteenth Amendments to the United States Constitution, 42 U.S.C.
§1983, 28 U.S.C. §§2201 and 2202, and Rule 57 of the Federal Rules of
Civil Procedure seeking declaratory and injunctive relief, as well as
monetary damages, for defendants' flagrant violation of plaintiff's
constitutional right of access to judicial records held by the Supreme
Court, Kings County.

1

2.     This action also seeks declaratory and injunctive relief, as well as monetary damages, for defendants' constitutionally offense sealing of those records by covert administrative fiat or judicial decree which served to deprive plaintiff of his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

3.     Following an investigation initiated after an unsuccessful attempt to obtain various records from the Supreme Court, Kings County, plaintiff discovered the Clerk's Office at the Criminal Term of that court maintains "dual docket sheets" and surreptitiously sealed records regarding the case of <u>People v. Adrian Diaz</u>, Supreme Court, Kings County Information Number 12753/93.

4.     The public docket sheet for Diaz's case lists documents and actions taken in the case that are available for public review. The sealed docket sheet, however, lists documents and actions taken in the case that are covertly sealed and unavailable for public inspection. The sealed docket sheet itself is likewise unavailable for public inspection.

5.     Despite plaintiff's request that defendants disclose the sealed records and abandon their unconstitutional practices, they have refused to do so. This lawsuit ensued.

## JURISDICTION, VENUE, & CONDITIONS PRECEDENT

6.     This action arises under the First, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983, 28 U.S.C. §§2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

7. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1343.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

9. Plaintiff has duly complied with all conditions precedent to the commencement of this action.


## PARTIES

10. Plaintiff JABBAR COLLINS is a prisoner incarcerated in Green Haven Correctional Facility, P.O. Box 4000, Stormville, New York 12582-0010.

11. Defendant JONATHAN P. LIPPMAN ("Lippman") is the Chief Administrative Judge for the New York City Office of Court Administration. Lippman is sued individually and in his official capacity as Chief Administrator of the New York City Office of Court Administration. At all times relevant to this complaint, Lippman exercised his powers under the color of the laws of the State of New York.

12. Defendant JAMES IMPERATRICE ("Imperatrice") is the Clerk of the Criminal Term of the Supreme Court, Kings County. Imperatrice is sued individually and in his official capacity as Clerk of the Criminal Term of the Supreme Court, Kings County. At all times relevant to this complaint, Imperatrice exercised his powers under the color of the laws of the State of New York.

13. Defendants JOHN DOES 1-3 ("Does 1-3") are fictitious. These names describe presently unknown Supreme Court Justices who, upon information and belief, surreptitiously ordered sealing of records and

3

court orders challenged in this complaint, or failed to file those records and orders for public inspection. Does 1-3 are sued individually and in their official capacity as Justices of the Supreme Court, Kings County. At all times relevant to this complaint, Does 1-3 exercised their powers under the color of the laws of the State of New York.

## FACTUAL BACKGROUND

### The Criminal Case Of People v. Adrian Diaz

14.   By Kings County Supreme Court Information Number 12753/93 Adrian Diaz ("Diaz") was charged with criminal possession of a controlled substance in the seventh degree ("Diaz's case").

15.   Plaintiff was not a co-defendant or party to Diaz's case.

16.   On November 1, 1993 Diaz appeared in the Supreme Court, Kings County ("court") before Justice Alan J. Meyer.

17.   During that appearance, Diaz pled guilty to criminal possession of a controlled substance in the seventh degree (P.L. §220.03), an A misdemeanor under New York law.

18.   On December 15, 1993 Diaz returned to court and once again appeared before Justice Meyer.

19.   Pursuant to Diaz's November 1, 1993 guilty plea, Justice Meyer sentenced Diaz to a three year term of probation and imposed a fine.

20.   Pursuant to New York Penal Law §65.15 (1), Diaz's three year term of probation commenced that same day: December 15, 1993.

21.   Absent Diaz's violation of probation and a court's declaration that he was delinquent (P.L. §65.15 [2]), Diaz's probationary

4

term expired three years later on December 14, 1996.

22.    Once under the New York City Department of Probation's (the "Probation Department") supervision, the Probation Department designated Diaz "Amber" indicating Diaz was a "high risk" individual and that his probation officer was to exercise increased supervision and monitoring of Diaz while he served his probationary term.

## Diaz Violates Several Conditions Of His Probation & Is Declared Delinquent

23.    Sometime subsequent to December 15, 1993 Diaz violated several conditions of probation by, among other things, failing to report to his probation officer as required, changing his address without notifying the Probation Department, leaving the jurisdiction of the Probation Department without its approval, failing to obtain gainful employment, and failing to pay his fine as required by the court.

24.    Upon information and belief, in accordance with the Probation Department's regulations and/or practices, following Diaz's violations of probation, the Probation Department prepared various reports, memorandums, and letters regarding Diaz's failure to adhere by the conditions of his probation, and violations thereof, and forwarded them, in whole or in part, to the court. Moreover, the court relied upon these documents in its post December 15, 1993 adjudication of issues regarding Diaz's violation of his conditions of probation.

25.    In accordance with the Probation Department's regulations and/or practices, sometime subsequent to December 15, 1993 the Probation

Department recommended to the court, in writing, that the court declare Diaz delinquent.

26.   In accordance with the Probation Department's regulations, it forwarded the court a summary of Diaz's breaches of his probation conditions.

27.   Sometime subsequent to December 15, 1993 the Probation Department requested that the court issue a notice to appear and/or arrest warrant based on Diaz's violation of probation.

28.   Sometime subsequent to December 15, 1993, based on the Probation Department's reports and communications to the court (¶¶24-27), the court declared Diaz delinquent in accordance with the Probation Department's request.

29.   Sometime subsequent to December 15, 1993, the court issued a notice directing Diaz to appear before it or, alternatively, a warrant for Diaz's arrest.

30.   Sometime subsequent to December 15, 1993, the Probation Department withdrew or recommended that the court moot its pending violation of probation proceedings against Diaz, or vacate its decision regarding the declaration of delinquency.

31.   The Probation Department requested, and/or ratified a request, that Diaz's probation violation be vacated, that his probationary term be terminated early, or that the conditions thereof relaxed.

32.   Upon information and belief, the court granted the Probation Department's request, mooted the pending violation of probation proceedings, or vacated its adverse ruling, and terminated, modified, or

6

continued Diaz's probationary term, and/or adjourned Diaz's case to a later date for entry of that judgment.

33.   Numerous documents regarding these occurrences (¶¶23-32) were created and filed with the court by the Probation Department and the court itself.

34.   The court, for example, issued or caused to be filed a "notice to appear" requiring Diaz to appear before the court.

35.   The court subsequently issued, or caused to be filed, a warrant for Diaz's arrest in connection with its declaration of delinquency.

36.   The court filed or caused to be filed a statement setting forth the conditions of probation Diaz violated and a description of the time, place, and manner in which the violation occurred.

37.   The court issued an order or orally revoked, modified continued, or terminated Diaz's probationary term. Alternatively, the court vacated the judgment on Diaz's declaration of delinquency and/or relaxed the conditions of Diaz's probation and by so doing generated various records regarding that action.

38.   All of the foregoing documents (¶¶24-37) and the proceedings upon them have historically been open for public inspection once submitted to the court and public access to those documents and proceedings plays a significantly positive role in the functioning of those proceedings.

**Defendants' Refusal To Permit Public**
**Inspection Of Any Documentation Regarding**
**Diaz's Violation Of Probation**

39.    Despite Diaz's violation of probation and the Probation Department's consequent filings with the court, the court's docket sheet for Diaz's case maintained for public inspection (the "public docket sheet") contains only two entries regarding court appearances in Diaz's case, none of which reflect the occurrences regarding Diaz's violation of the conditions of his probation.

40.    The first entry on the public docket sheet indicates that on November 1, 1993 Diaz pled guilty.

41.    The second entry on the public docket sheet indicates that on December 15, 1993 Diaz was sentenced to his three year probationary term.

42.    There are no entries on the public docket sheet reflecting the court's consideration of reports and other communications (¶24) in Diaz's case.

43.    There are no entries on the public docket sheet indicating a declaration of delinquency occurred in Diaz's case.

44.    There are no entries on the public docket sheet indicating a notice to appear and/or arrest warrant were filed in Diaz's case.

45.    There are no entries on the public docket sheet indicating a request for early termination of Diaz's probationary term was submitted to the court.

46.    There are no entries on the public docket sheet indicating the court terminated Diaz's probationary term early.

47.    There are no entries on the public docket sheet indicating any further proceedings occurred in Diaz's case subsequent to December 15, 1993.

48.    Nor are there any entries on the public docket sheet indicating the court vacated any prior judgment regarding Diaz's declaration of delinquency or that a motion to seal the proceedings in Diaz's case was submitted and/or granted.

49.    Similarly, the case jacket for Diaz's case contains only two entries regarding court proceedings in his case, none of which reflected Diaz's violation of probation.

50.    The case jacket's first entry reflects Diaz's November 1, 1993 Diaz plea.

51.    The case jacket's second and final entry reflects Diaz's December 15, 1993 sentence to three years probation and that Diaz was given until February 2, 1994 to pay his fine.

52.    There are no documents available to the public in the court's case file for Diaz's case, and no entries on the case jacket, indicating a violation of probation, declaration of delinquency, notice to appear, warrant, request for early termination of probation, or other like action took place with respect to Diaz's probationary term.

53.    There are no documents in the court's case file or entries on the case jacket for Diaz's case indicating his case was adjourned to December 31, 1999 for final judgment.

9

54.   There are no entries on the case jacket for Diaz's case, and no documents in court's case file for Diaz's case, indicating a sealing order was applied for and/or issued in his case with respect to any record in his case.

## Imperatrice's Unconstitutional Administrative Sealing

55.   Upon information and belief, Imperatrice employed two or more administrative techniques for sealing records (¶¶24-37, ¶71) in Diaz's case.

56.   Upon information and belief, Imperatrice maintains a "dual docket" sheet for Diaz's case: one a public docket sheet open for public inspection and the other a sealed docket sheet open for inspection solely by designated court personnel.

57.   The sealed docket sheet completely conceals from public inspection all occurrences in Diaz's case subsequent to February 2, 1994 and all filings, ex parte and in camera included, regarding Diaz's violation of probation and related matters.

58.   Upon information and belief, Imperatrice sealed the records reflected on the sealed docket sheet, and the sealed docket sheet itself, administratively.

59.   Imperatrice's sealing prohibits court personnel from acknowledging the existence of, and/or releasing, any information regarding proceedings relating to Diaz's violation of the conditions of his probation, including the nature of the occurrence, the date on which it occurred, and the Judge before whom any court proceedings regarding those

10

violations occurred.

60.    Imperatrice's sealing was not undertaken pursuant to statutory or judicial authority. Instead, the sealing was undertaken pursuant to an unwritten policy and/or practice of Imperatrice or his predecessor which allowed such sealing at the request of favored attorneys or other influential individuals.  Imperatrice's sealing was intentional and undertaken in reckless and callous indifference to plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

61.    Alternatively, in violation of state and federal law, Imperatrice failed to file the documentation related to Diaz's violation of probation (¶¶23-37, ¶71) in the court file for Diaz's case so as to prohibit public inspection. Imperatrice's failure to file this documentation was undertaken in total absence of judicial direction and contravened purely ministerial duties imposed upon Imperatrice by law.  Moreover, Imperatrice's failure to file the documentation was intentional and undertaken in reckless and callous indifference to plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

62.    Imperatrice's sealing and/or failure to file the records occurred by administrative fiat, did not permit public notice of the intended or actual sealing, and thus did not provide plaintiff with an opportunity to challenge it.

## Does 1-3's Adjournments And Surreptitious Sealing

63.    Alternatively, upon information and belief, the sealed records in Diaz's case (¶¶23-37, ¶71), including the sealed docket sheet (¶57)

11

were sealed by judicial order, which was itself placed under seal, thereby preventing any public notice, scrutiny, or challenge.

64.    Upon information and belief, subsequent to February 9, 1994 Does 1-3 adjourned Diaz's case to December 31, 1999 for final judgment.

65.    Upon information and belief, the order adjourning Diaz's case to December 31, 1999 and all documentation related to that adjournment were sealed by Does 1-3.

66.    Upon information and belief, the order sealing the adjournment order and related documentation was itself placed under seal by Does 1-3.

67.    Upon information and belief, Does 1-3's sealing prohibits court personnel from acknowledging the existence of, and/or disclosing to the public, specified information or documentation regarding Diaz's case, specifically those sealed matters.

68.    Upon information and belief, the surreptitious sealing orders were overbroad and did not identify facts justifying the sealing in Diaz's case.

69.    The sealing orders likewise deprived plaintiff of notice of the sealing and an opportunity to challenge it.

70.    Alternatively, Does 1-3 refused to place the documentation related to Diaz's violation of probation (¶¶23-37, ¶71) in the court file for Diaz's case for public inspection.

## Imperatrice Refuses To Disclose The Sealed Records

71.     By a letter dated July 13, 2004 plaintiff wrote to Imperatrice, by certified return receipt mail, and requested that Imperatrice provide him with copies of:

(a)     The sealed docket sheet reflecting all filings in Diaz's case subsequent to December 15, 1993, regardless of whether those filings were later withdrawn or otherwise mooted;

(b)     All reports, memorandums, or other communications submitted to the court by the New York City Department of Probation notifying the court regarding Diaz's violation of probation or requesting that the court take any form of action in the case;

(c)     The statement setting forth the conditions of probation Diaz violated, C.P.L. §410.70 (2);

(d)     The court's declaration of delinquency, C.P.L. §410.30;

(e)     All notices to appear and warrants issued in Diaz's case, C.P.L. §410.40 (1) and (2);

(f)     The final order adjudicating Diaz's declaration of delinquency, C.P.L. §410.70 (5);

(g)     The transcripts of all proceeding conducted in Diaz's case subsequent to December 15, 1993;

(h)     The notes or summaries of all in camera and/or ex parte conferences conducted in Diaz's case subsequent to December 15, 1993;

(i)     All requests to withdraw, moot, terminate, or otherwise annul Diaz's declaration of delinquency or to terminate Diaz's probation, C.P.L. §410.90;

(j)     All requests or motions to seal the proceedings relating to occurrences in Diaz's case subsequent to December 15, 1993;

    (k)    All documents relied upon by the court to reach its decision with respect to any occurrences in Diaz's case subsequent to December 15, 1993, especially with respect to Diaz's probation term; and

    (l)    Every other sealed document possessed by the court regarding Diaz's case.

72.    Citing the First and Fourteenth Amendments to the United States Constitution, plaintiff's letter informed Imperatrice that he was entitled to these records under the foregoing authorities.

73.    Plaintiff's letter was delivered to Imperatrice, in care of the court, on July 16, 2004.

74.    As of the date of this complaint, Imperatrice has failed to respond to plaintiff's July 13, 2004 letter or to provide plaintiff with copies of the requested documents. Imperatrice's maintenance of dual docket sheets and his refusal to disclose the sealed records in Diaz's case are ongoing and, upon information and belief, will continue absent judicial intervention.

**Lippman Fails To Remedy
Imperatrice's Constitutionally Offensive Actions**

75.    By a letter dated July 19, 2004 plaintiff wrote to Lippman complaining of Imperatrice's maintenance of dual docket sheets for Diaz's case, his administrative sealing, and/or his failure to file the records regarding Diaz's violation of probation for public inspection.

76.    In his letter to Lippman, plaintiff detailed Imperatrice's sealing and challenged actions (¶¶55-62, ¶¶71-74).

77.   Plaintiff also annexed a copy of his July 13, 2004 letter to Imperatrice (¶71), incorporated its requests, and asked Lippman to direct Imperatrice to disclose the sealed records to plaintiff.

78.   Plaintiff's letter was delivered to Lippman, in care of the New York City Office of Court Administration, on July 21, 2004.

79.   As of the date of this complaint, Lippman has not responded to plaintiff's letter nor, upon information and belief, directed Imperatrice to abandon his challenged practices or to disclose the sealed records. Lippman's refusal is ongoing and, upon information and belief, Lippman will not remedy Imperatrice's maintenance of the dual docket sheets and his refusal to disclose the sealed records absent judicial intervention.

80.   Plaintiff has no adequate or speedy remedy at law and has been, and will continue to be, irreparably injured unless defendants are enjoined from their unconstitutional actions.

### AS FOR PLAINTIFF'S FIRST CAUSE OF ACTION
[1st and 14th Amendments; Docket Sheets; Imperatrice & Lippman]

81.   Plaintiff repeats the allegations contained in ¶¶1-62 and ¶¶71-80 of this Complaint and incorporates them as though fully set forth herein.

82.   As a direct and proximate result of Imperatrice's intentional and/or negligent refusal to disclose or file for public inspection, the sealed docket sheets for Diaz's case reflecting all filings in that case subsequent to December 15, 1993, plaintiff was deprived of his right of access to

docket sheets under the First and Fourteenth Amendments to the United States Constitution. Lippman is also liable for the injuries resulting from Imperatrice's actions based on Lippman's failure to remedy Imperatrice's wrongs after being informed of them by plaintiff's July 19, 2004 letter of complaint, and his awareness of the ongoing improper sealing procedures utilized by courts under his authority.

## AS FOR PLAINTIFF'S SECOND CAUSE OF ACTION
[1st and 14th Amendments; Various Records; Imperatrice & Lippman]

83.   Plaintiff repeats the allegations contained in ¶¶1-62 and ¶¶71-82 of this Complaint and incorporates them as though fully set forth herein.

84.   As a direct and proximate result of Imperatrice's intentional and/or negligent sealing of, and/or refusal to disclose or file for public inspection:

(a)   The sealed docket sheet reflecting all filings in Diaz's case subsequent to December 15, 1993, regardless of whether those filings were later withdrawn or otherwise mooted;

(b)   All reports, memorandums, or other communications submitted to the court by the New York City Department of Probation notifying the court regarding Diaz's violation of probation or requesting that the court take any form of action in the case;

(c)   The statement setting forth the conditions of probation Diaz violated, C.P.L. §410.70 (2);

(d)   The court's declaration of delinquency, C.P.L. §410.30;

(e)   All notices to appear and warrants issued in Diaz's case, C.P.L. §410.40 (1) and (2);

(f)    The final order adjudicating Diaz's declaration of delinquency, C.P.L. §410.70 (5);

(g)    The transcripts of all proceeding conducted in Diaz's case subsequent to December 15, 1993;

(h)    The notes or summaries of all in camera and/or ex parte conferences conducted in Diaz's case subsequent to December 15, 1993;

(i)    All requests to withdraw, moot, terminate, or otherwise annul Diaz's declaration of delinquency or to terminate Diaz's probation, C.P.L. §410.90;

(j)    All requests or motions to seal the proceedings relating to occurrences in Diaz's case subsequent to December 15, 1993;

(k)    All documents relied upon by the court to reach its decision with respect to any occurrences in Diaz's case subsequent to December 15, 1993, especially with respect to Diaz's probation term; and

(l)    Every other sealed document possessed by the court regarding Diaz's case,

plaintiff was deprived of his right of access to judicial records under the First and Fourteenth Amendments to the United States Constitution. Lippman is jointly liable for the injuries resulting from Imperatrice's actions based on Lippman's failure to remedy Imperatrice's wrongs after being informed of them by plaintiff's July 19, 2004 letter of complaint and his awareness of the ongoing improper sealing procedures utilized by courts under his authority.

## AS FOR PLAINTIFF'S THIRD CAUSE OF ACTION
[5th and 14th Amendments; Due process; Imperatrice & Lippman]

85.   Plaintiff repeats the allegations contained in ¶¶1-62 and ¶¶71-84 of this Complaint and incorporates them as though fully set forth herein.

86.   As a direct and proximate result of Imperatrice's intentional and unauthorized administrative sealing of judicial records in Diaz's case, and/or his failure to file those records for public inspection, plaintiff was deprived of his right to substantive and procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution as such actions deprived plaintiff of the requisite findings necessary to justify sealing, notice of the sealing, and an opportunity to challenge that action. Lippman is jointly liable for the injuries resulting from Imperatrice's actions based on Lippman's failure to remedy Imperatrice's wrongs after being informed of them by plaintiff's July 19, 2004 letter of complaint and his awareness of the ongoing improper sealing procedures utilized by courts under his authority.


## AS FOR PLAINTIFF'S FOURTH CAUSE OF ACTION
[1st and 14th Amendments; Docket Sheets; Does 1-3]

87.   Plaintiff repeats the allegations contained in ¶¶1-54 and ¶¶63-74 of this Complaint and incorporates them as though fully set forth herein.

88.   Does 1-3's failure to file the sealed docket sheets for public inspection, and/or their orders sealing the sealed docket sheets in Diaz's

case were overbroad and failed to specify the necessary factual findings to justify sealing and proximately resulted in plaintiff being deprived of his right to inspect and copy docket sheets under the First and Fourteenth Amendments to the United States Constitution.

## AS FOR PLAINTIFF'S FIFTH CAUSE OF ACTION
[1st and 14th Amendments; Various Records; Does 1-3]

89.   Plaintiff repeats the allegations contained in ¶¶1-54, ¶¶63-74, and ¶¶87-88 of this Complaint and incorporates them as though fully set forth herein.

90.   Does 1-3's failure to file the documents identified in ¶98 for public inspection, and/or their orders sealing those records were overbroad and failed to specify the necessary factual findings to justify sealing and proximately resulted in plaintiff being deprived of his right to inspect and copy judicial records and documents under the First and Fourteenth Amendments to the United States Constitution.

## AS FOR PLAINTIFF'S SIXTH CAUSE OF ACTION
[5th and 14th Amendments; Due process; Does 1-3]

91.   Plaintiff repeats the allegations contained in ¶¶1-54, ¶¶63-74 and ¶¶87-90 of this Complaint and incorporates them as though fully set forth herein.

92.   Does 1-3's intentional failure to file the records identified in ¶71 of this Complaint for public inspection, their sealing of judicial records in Diaz's case, and their sealing of the orders sealing the records in

Diaz's case, violates plaintiff's right to substantive and procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution by depriving plaintiff of the requisite findings necessary to support the sealing, notice of the sealing, and an opportunity to challenge that action.

## **JURY TRIAL DEMANDED**

Plaintiff demands trial by jury of all issues in this action.

WHEREFORE, plaintiff demands judgment against defendants as follows:

A.   As to all defendants, a declaratory judgment declaring that the sealed docket sheet and those records reflected on it, as well as all other sealed records in Diaz's case, are open for public inspection; and

B.   As to defendants Lippman and Imperatrice, a permanent injunction requiring them to:

   i.   provide plaintiff with a copy of the sealed docket sheet and all other documents requested by plaintiff in his July 13, 2004 letter to Imperatrice (¶71); and

   ii.   permanently desist from utilizing the dual docket sheets and administratively sealing records in Diaz's case;

C.   As to defendants Lippman and Imperatrice compensatory damages in the amount of ten thousand dollars ($10,000.00), or nominal damages;

D.   As to defendants Lippman and Imperatrice, punitive damages in the amount of thirty thousand dollars ($30,000.00); and

E.   Such further relief as this Court deems proper.

Dated:  Stormville, New York
        August 12, 2004

JABBAR COLLINS
95A2646
Plaintiff
P.O. Box 4000
Stormville, New York
12582-0010

## VERIFICATION

JABBAR COLLINS, being duly sworn, hereby states the following is true:

I am the plaintiff in this action and have read the foregoing complaint. The same is true according to my knowledge except as to those matters stated therein to be made upon information and belief, which matters I believe to be true.

Dated:  Stormville, New York
         August 12, 2004

JABBAR COLLINS
95A2646
Plaintiff
P.O. Box 4000
Stormville, New York
12582-0010

Sworn to me this _12th_ day of _August_, 2004

NOTARY PUBLIC
PAUL J BRAUN
Notary Public State of New York
Qualified In Dutchess County
Commission # 01BR5076658
Commission Expires Dec 23, 2006