UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

JABBAR COLLINS,

                         Plaintiff,

    -against-

JONATHAN LIPPMAN, individually, and as
Chief Administrative Judge for the New York
City Office Court Administration; JAMES
F. IMPERATRICE, individually, and as Chief
Clerk of the Criminal Term of the Supreme
Court, Kings County; and JOHN DOES 1-3,
individually, and as Justices of the Supreme
Court, Kings County,

                       Defendants.

------------------------------------------------------X

04 CV 3215 (FB)(LB)

---

## MEMORANDUM OF LAW OPPOSING NON-PARTY THE NEW YORK CITY DEPARTMENT OF PROBATION'S MOTION TO QUASH PLAINTIFF'S SUBPOENA DUCES TECUM

---



JABBAR COLLINS
95A2646
Plaintiff
P.O. Box 4000
Stormville, New York
12582-0010

January 24, 2005

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................ 1

POINT I

THE NYCDOP'S MOTION TO QUASH COLLINS' SUBPOENA MUST BE DENIED AS (1) THE SUBPOENAED RECORDS ARE NOT PRIVILEGED AND, EVEN IF THEY WERE, (2) THE NYCDOP FAILED TO ARTICULATE THE REQUISITE FACTUAL SPECIFICITY TO INVOKE A PRIVILEGE, AND (3) THE IMPORTANCE OF THE SUBPOENAED RECORDS TO COLLINS' CASE EASILY TRUMPS THE INSIGNIFICANT CONFIDENTIALITY INTEREST REFLECTED IN THE RELEVANT STATE LAW ........................................................................... 2

A.    Standard Of Review ........................................................ 3

B.    The NYCDOP's Claim Of Confidentiality ...................... 4

    1.    The Relevant State Statutes And Regulations Do Not Create An Evidentiary Privilege ............... 5

    2.    Even If The Relevant State Statutes And Regulations Did Create An Evidentiary Privilege Under Fed.R.Civ.P. 26 (b)(1) And Fed.R.Evid. 501, The NYCDOP Failed To Articulate The Requisite Factual Specificity To Invoke It ............ 5

    3.    Even Considering The Confidentiality Interest Underlying The Relevant State Statutes And Regulations, The Importance Of The Subpoenaed Records To Collins' Case Easily Trumps That Interest ............................................................ 8

        a.    The confidentiality interest reflected in 9 N.Y.C.R.R. §348 is insignificant ........................ 9

b.    FCA §§750 and 783, 22 N.Y.C.R.R. §2501.3, and C.P.L. §390.50 deeming presentence reports confidential and prohibiting their disclosure, and Executive Law §243, have no relevance here as Collins' subpoena does not require production of Diaz's presentence report or information used to compile it ................................................................ 10

c.    All factors favoring disclosure fall in Collins' favor ........................................................................ 11

     i.      The records are relevant to Collins' case ..... 12

     ii.      The importance of the subpoenaed records to Collins' case ............................................. 16

     iii.      The strength of Collins' case ........................ 17

     iv.      The case's importance to the public interest 20

     v.      No factors exist disfavoring disclosure ....... 21

C.    The NYCDOP's Claim That Collins Failed To Demonstrate The Relevance Of The Subpoenaed Records Is Misplaced ........................................................ 22

D.    Direct Disclosure Of The Subpoenaed Records Is Mandatory ........................................................................ 23

POINT II

COLLINS' NON-PARTY DISCOVERY SHOULD NOT BE STAYED PENDING DISPOSITION OF DEFENDANTS' MOTION TO DISMISS AS (1) DEFENDANTS LACK STANDING TO OBJECT TO COLLINS' NON-PARTY SUBPOENA AND, IN ANY EVENT, (2) THEIR MOTION IS PATENTLY FRIVOLOUS. .................................................... 24

A.    Defendants' Lack Standing To Seek A Stay Of Collins' Non-Party Discovery ........................................................ 25

B.    Defendants' Rule 12 (b)(1) Motion ................................. 27

1. Defendant's Claim That Collins' Case Does Not Present A Case In Controversy Fails As Collins Has Established The Existence Of Sealed Records ............................................................. 28

2. The Rooker-Feldman Doctrine Does Not Bar Collins' Claim As Defendants Have Not Established The Records At Issue Were Sealed By Judicial Decree, Collins Was Not A Party To Diaz, And His Complaint Challenges The Alleged Sealing Orders As Administratively Implemented ......................................................... 29

3. Collins' Claims Are Not Barred By The Eleventh Amendment As He Does Not Seek Monetary Damages Against Defendants In Their Official Capacities. Moreover, That Amendment Does Not Bar Prospective Relief ................................... 30

4. As Defendants Have Not Established They Sealed The Records In Dispute Pursuant To Court Order, They Are Not Entitled To Absolute Immunity With Respect To Collins' Claim For Monetary Damages. Moreover, The Absolute Immunity Doctrine Is Inapplicable to Collins' Claim For Prospective Relief ................................ 31

C. Defendant's Rule 12 (b)(6) Motion ................................... 33

1. Collins Sufficiently Pleaded Lippman's Personal Involvement So As To Impose Liability And, In Any Event, Lippman's Personal Involvement Is Not Required For Prospective Relief ................... 34

D. Defendant's Rule 12 (c) Motion ....................................... 36

CONCLUSION ................................................................. 38

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JABBAR COLLINS,                                             :
                                                            :
                                       Plaintiff,           :
                                                            :
               -against-                                    :
                                                            :     04 CV 3215 (FB)(LB)
JONATHAN LIPPMAN, individually, and as                      :
Chief Administrative Judge for the New York                 :
City Office of Court Admistration; JAMES                    :
F. IMPERATRICE, individually, and as Chief                  :
Clerk of the Criminal Term of the Supreme                   :
Court, Kings County; and JOHN DOES 1-3,                     :
individually, and as Justices of the Supreme                :
Court, Kings County,                                        :
                                                            :
                                       Defendants.          :
                                                            :
------------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiff Jabbar Collins ("Collins") submits this memorandum of law in support of his opposition to non-party the New York City Department of Probation's ("NYCDOP") January 10, 2005 motion to quash his November 24, 2004 subpoena duces tecum.   The court is respectfully referred to Collins' affidavit opposing that motion for the factual predicate of this memorandum.

1

<u>POINT I</u>

THE NYCDOP'S MOTION TO QUASH COLLINS'
SUBPOENA MUST BE DENIED AS (1) THE
SUBPOENAED RECORDS ARE NOT
PRIVILEGED AND, EVEN IF THEY WERE, (2)
THE NYCDOP FAILED TO ARTICULATE THE
REQUISITE FACTUAL SPECIFICITY TO
INVOKE A PRIVILEGE, AND (3) THE
IMPORTANCE OF THE SUBPOENAED RECORDS
TO COLLINS' CASE EASILY TRUMPS THE
INSIGNIFICANT CONFIDENTIALITY INTEREST
REFLECTED IN THE RELEVANT STATE LAW.
FED.R.CIV.P. 26 and 45; FED.R.EVID. 501.

Collins' subpoena duces tecum sought the cumulative case file of former probationer Adrian Diaz and various documentation the NYCDOP filed with the Kings County Supreme Court. The NYCDOP moves to quash Collins' subpoena, claiming (1) the records sought are "confidential", (2) disclosure could endanger Diaz's life or "other people's safety and privacy", and (3) Collins failed to make the "necessary showing that access" to the records is "relevant to his case." (NYCDOP's January 10, 2005 Motion To Quash ("Motion To Quash") at ¶¶8-17). These claims are absurd.

The statutes and regulations upon which the NYCDOP rely do not create an evidentiary privilege and, even if they did, the NYCDOP failed to properly invoke it. Moreover, the importance of the subpoenaed records to Collins' case easily trumps the insubstantial confidentiality interest reflected in the state law.

2

Similarly, the NYCDOP's argument that Collins failed to demonstrate the relevance of the subpoenaed records is legally baseless as Collins has no such burden. Rather, as the NYCDOP moved to quash Collins' subpoena, the burden was upon the NYCDOP to demonstrate the records lacked relevance. In any event, Collins amply demonstrates the records are relevant to his case.

Finally, the NYCDOP's failure to demonstrate the records are privileged, or that it is entitled to an in camera inspection of the records, mandates direct disclosure.

## A.   Standard Of Review

"Civil discovery rules apply to subpoenas issued under Rule 45." In re of Ramekers, 33 F.Supp.2d 312, 314 (S.D.N.Y. 1999).   Fed.R.Civ.P. 26 (b)(1) provides "[p]arties may obtain discovery regarding any matter ... which is relevant to the subject matter involved in the pending action ...." Rule 26 also provides that "a district court may limit discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive, (ii) the party seeking discovery has ample opportunity by discovery in the action to obtain the information sought, or (iii) the burden or expenses of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Id. at 314.

"Against the backdrop of Rule 26, courts can determine whether to enforce a subpoena for production of documents. *The burden of persuasion is borne by the party opposing the subpoena.* See, Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996)." In Re Ramekers, 33 F.Supp.2d at 314 (Emphasis added).

**B.   The NYCDOP's Claim Of Confidentiality**

Questions of privilege in civil rights actions challenging the denial of constitutional rights are governed by federal law. See, King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)("Questions of privilege in federal civil rights cases are governed by federal law"). The NYCDOP concedes Diaz's case file is not privileged under federal law. See, United States v. Holmes, 594 F.2d 1167, 1171 (8th Cir. 1979); United States v. Simmons, 964 F.2d 763 (8th Cir. 1992)("Under Holmes, no privilege [under Fed.R.Evid. 501] attached to ... information in [an individual's] probation files.").

Nevertheless, the NYCDOP contends several state statutes and regulations -FCA §§750 and 783, C.P.L. §390.50, 9 N.Y.C.R.R. §§§348.4, 350.11 (c) and 351.8 (d), and 22 N.Y.C.R.R. §2501.3- render the records "confidential" and thus exempt from discovery (Motion To Quash at ¶8). That argument must be rejected for three reasons.

4

1.  **The Relevant State Statutes And Regulations Do Not Create An Evidentiary Privilege**

"Merely asserting that a state statute declares that the records in question are 'confidential' does not make out a sufficient claim that the records are 'privileged' within the meaning of Fed. R. Civ. P. 26 (b)(1) and Fed. R. Evid. 501." Van Emrik v. Chemung City Dept. of Social Services, 121 F.R.D. 22, 25 (W.D.N.Y. 1988); Martin v. Lamb, 122 F.R.D. 143, 146 (W.D.N.Y. 1988)(collecting cases). "A non-disclosure or 'confidentiality' provision in a statute may not always create an evidentiary privilege, especially if the legislature did not 'explicitly create an evidentiary privilege.'" Id. at 25 (internal citation omitted); American Civil Liberties Union of Mississippi, Inc. v. Finch, 638 F.2d 1336, 1342 (5th Cir. 1981); Nguyen Da Yen v. Kissinger, 528 F.2d 1194, 1205 (9th Cir. 1975). Thus the fact that state statutes and regulations deem the subpoenaed records "confidential" cannot, in and of itself, preclude disclosure.

2.  **Even If The Relevant State Statutes And Regulations Did Create An Evidentiary Privilege Under Fed.R.Civ.P. 26 (b)(1) And Fed. R.Evid. 501, The NYCDOP Failed To Articulate The Requisite Factual Specificity To Invoke It**

Under King v. Conde, 121 F.R.D. 180, 189 (E.D.N.Y. 1988):

> The party seeking to invoke the privilege bears the burden of justifying its application. The government must specify 'which documents or class of documents are privileged and for what reasons.' This threshold showing must explain the reasons for nondisclosure with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information. 'Unless the government, through competent declarations, shows

the court *what interests* [of law enforcement or privacy] would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be, the court cannot conduct a meaningful analysis. **If the [resisting party] makes no such showing, the court has 'no choice but to order disclosure.'** (Emphasis added and in original).

The NYCDOP's claim of privilege fails miserably against this standard. While conceding the <u>King</u> standard controls in Collins' case (Motion To Quash at ¶¶9-11), the NYCDOP nevertheless attempts to satisfy it with just one sentence regarding the purported endangerment it claims would result from disclosure:

> "The records detail involvements with the District Attorney's Office. If this information is made public, it could endanger his life." (Motion To Quash at ¶11).

This conclusory declaration is insufficient under <u>King</u> as it does not provide the court with sufficient information to "conduct a meaningful balancing analysis." <u>King</u> at 189. The NYCDOP does not identify exactly which records exist or even allege Diaz's purported "involvements" were confidential. It fails to explain what Diaz's purported "involvements" entailed, where they occurred, what District Attorney's Office they involved, when they ended, and especially, why, how, and to what degree, disclosure could endanger him. Indeed, the NYCDOP's declaration ***does not*** even indicate Diaz's "involvements" with the District Attorney concerned a case other than his own.

The NYCDOP's failure to provide such factual specificity precludes it from invoking any purported privilege and indeed, arguably warrants

6

sanctions:

> [The factual declaration invoking a privilege] must
> explain (not merely state conclusorily) how the
> materials at issue have been generated or collected;
> how they have been kept confidential; what specific
> interests (e.g. of the police officers, of law
> enforcement, or of public concern) would be injured
> by disclosure to plaintiff, ... and to the public; and
> the projected severity of each such injury. This
> procedure should discourage applications for non-
> revelation in all but deserving cases. Pro forma
> applications may lead to Rule 11 sanctions. Id. at
> 189.

As failure to comply with this standard mandates summary disclosure of a police officer's personnel records, King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988), a fortori, it mandates disclosure of a convicted criminal's probation records.

Similarly untenable is the NYCDOP's claim regarding the affect on third parties of disclosure of the subpoenaed records. The NYCDOP inexplicably claims:

> "...[Diaz's] probation records ... have contact
> information of loved ones and closed (sic) relations.
> If these (sic) information are (sic) made public, it
> would invade the privacy of innocent third parties
> and possibly cause harm and danger to them[.]"
> (Motion To Quash at ¶12).

But Collins' subpoena specifically exempted from its demands personal information pertaining to Diaz and his relatives and thus the NYCDOP's claim is moot:

> "This subpoena **does not** require production of ...
> Diaz's personal information such as his social
> security number, home address, and those of his
> relatives" (Exhibit at A at 2 n.1)(Emphasis in

7

original).

Accord, King, 121 F.R.D at 198 ("The parties are expected to cooperate in agreeing to redact names and addresses where revelation may interfere with privacy without substantial advantage to the plaintiff.").

Accordingly, the NYCDOP's factual declaration is insufficient to invoke any privilege and must be summarily rejected. King v. Conde, 121 F.R.D. at 196 ("disclosure of the police officers' interrogatories ... is appropriate, because the defendants have made neither any substantial showing of harm nor presented any reasons at all, beyond the state privilege statute, why discovery should not be ordered.").[1]

### 3. Even Considering The Confidentiality Interest Underlying The Relevant State Statutes And Regulations, The Importance Of The Subpoenaed Records To Collins' Case Easily Trumps That Interest

In the spirit of comity, federal courts will consider -but not directly apply- state privilege rules in resolving discovery issues. Cruz v. Kennedy, 1997 U.S. Dist. LEXIS 23012 *4 (S.D.N.Y. 1997). Nevertheless, even considering relevant state law, disclosure is still required in Collins' case.

---

1    Parenthetically, the NYCDOP *does not* claim Diaz was an informer, that his "involvements" with the District Attorney was confidential. In any event, even if it did, the burden was on the NYCDOP "to show why [confidential materials] should be reviewed in camera and why disclosure should be denied, especially in the context of an appropriate protective order." King v. Conde 121 F.R.D. at 194.

### a.   The confidentiality interest reflected in 9 N.Y.C.R.R §348 is insignificant[2]

In Leef v. Evers, 81 Misc.2d 518 (Civil Court, New York County 1975), rv'd on other grounds, 85 Misc.2d 111 (1st Dep't App. Term 1976) the NYCDOP moved to quash a judgment creditor's subpoena duces tecum for production of probation records reflecting a judgment debtor's personal information. The NYCDOP asserted it was barred from complying with the subpoena because the subpoenaed documents were "privileged and confidential" pursuant to, inter alia, 9 N.Y.C.R.R. §345.16[b]. The court rejected the NYCDOP's claim and concluded the regulation did not apply:

> These Rules ... have no applicability to the matter before this court. If this court, in the exercise of its discretion, determines that the information sought in the subpoena is not, and should not be privileged, and not therefore barred from disclosure, the department rule in no way limits the court from directing such disclosure.

Thus, the confidentiality interest underlying 9 N.Y.C.R.R. §348 is so weak that even under New York's discovery law -which is narrower than federal law, Cruz v. Kennedy, 1997 U.S. Dist. LEXIS 23012 at *4 (S.D.N.Y. 1997)- it cannot bar disclosure. A fortori, it is insufficient to bar disclosure under the liberal standards of federal discovery law.

---

2    Any privacy interest implicated by the statutes and regulations upon which the NYCDOP rely is particularly insubstantial as the subpoenaed documents do not demand personal information. Cf., Kings v. Conde, 121 F.R.D. at 191 (police officers' privacy interest in personnel records reflecting their involvement in disciplinary proceedings or citizens complaints filed against them "is not substantial, because it is not the kind of 'highly personal' information warranting constitutional safeguard.").

9

**b.   FCA §§750 and 783, 22 N.Y.C.R.R. §2501.3, and C.P.L. §390.50 deeming presentence reports confidential and prohibiting their disclosure, and Executive Law §243, have no relevance here as Collins' subpoena does not require production of Diaz's presentence report or information used to compile it[3]**

Collins' narrowly drafted subpoena specifically exempted Diaz's presentence report from the scope of its demands (Exhibit G at 2 n.1)("This subpoena *does not* require production of Diaz's 1993 presentence report [or] presentence investigation information ....")(Emphasis in original). As C.P.L. §390.50 is limited to deeming presentence information confidential, it has no applicability to the records required by Collins' subpoena. See, Leef v. Evers, 81 Misc.2d 518 (Civil Court, New York County 1975), rv'd on other grounds, 85 Misc.2d 111 (1st Dep't App. Term 1976):

> The language of this Statute, and the Commentary thereto, lead ... to the opinion that said Statute is in no way applicable as a bar to disclosure under the circumstances presented upon this motion. This Statute deals with efforts of the Probation Department to assemble necessary pre-sentence information to assist a judge in passing sentence in a criminal proceeding. The present whereabouts, nature and place of employment of the debtor

_____

3    As stated in Leff, supra a presentence report results from a presentence investigation designed to provide the court with relevant information to assist the court in imposing sentence. "The presentence investigation consists of the gathering of information with respect to the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, the defendant's social history, employment history, family situation, economic status, education and personal habits. The investigation may also include any other matters which the agency conducting the investigation deems relevant to the question of sentence and must include any matters the court directs to be included." 34 N.Y. Jur 2d, Criminal Law §2635.

following his sentence is not that type of information.

Consequently, C.P.L. §390.50, FCA §§750 and 783, 22 N.Y.C.R.R. §2501.3, and Executive Law §243 do not provide the NYCDOP with any basis to resist Collins' subpoena.[4]

### c.  All factors favoring disclosure fall in Collins' favor

In conducting the balancing test between a federal plaintiff's need for information subject to state law interests <u>King v. Conde</u>, 121 F.R.D. at 195 (E.D.N.Y. 1988) identified four factors weighing in favor of disclosure: (1) the relevance of the information to the plaintiff's case, (2) the importance of the information to the plaintiff's case, (3) the strength of the plaintiff's case, and (4) the case's importance to the public interest. Here, each of these factors weigh in favor of disclosure.

---

4       Even if they did, they would not preclude discovery. <u>See</u>, <u>Leef v. Evers</u>, 81 Misc.2d 518 (Civil Court, New York County 1975), rv'd on other grounds, 85 Misc.2d 111 (1st Dep't App. Term 1976)("Even if [C.P.L. §390.50] was held to be applicable as a possible bar to the disclosure of the post-sentencing information sought in the subject subpoena, this court still would possess the authority in its discretion to direct disclosure."); <u>King v. Conde</u>, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)(state privacy law should never be permitted to "frustrate the important federal interest in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983.").

### i. The records are relevant to Collins' case

"...[D]iscovery should be broad and any relevant materials, including those reasonably calculated to lead to admissible evidence, should be accessible." King v. Conde, 121 F.R.D. 180, 194 (E.D.N.Y. 1988). "Relevance for discovery purposes is an extremely broad concept which 'has been construed broadly to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 101 (S.D.N.Y. 1997), citing, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978).

Discovery is broader in scope than admissibility, and discovery may be had of even inadmissible matters. King at 194. Moreover, while Federal Rule of Civil Procedure 26 (b)(1) was amended to narrow the focus of discovery to an action's claims or defenses, "the amendments ... do not dramatically alter the scope of discovery...." World Wrestling Federation Entertainment, Inc. v. William Morris Agency, Inc., 204 F.R.D. 263, 265 n.1 (S.D.N.Y. 2001); Sureles v. Air France, 2001 WL 1142231, at *1 n.3 (S.D.N.Y. 2001).

There are at least eleven reasons why the subpoenaed records are relevant to Collins' case:

1. The records are relevant because Diaz's cumulative case record will establish every single court filing in Diaz. The case record is "a single file containing all information with respect to a case from its inception through its conclusion." 9 N.Y.C.R.R. §348.1 (b). This file contains "all records developed and/or received" by the NYCDOP regarding Diaz's probationary term, 9 N.Y.C.R.R. §348.1 (b). For example, the case record will contain "legal documents", Diaz's probation supervision history, and reflect all actions taken in his case "from entry until termination of probation services." 9 N.Y.C.R.R. §348.2 (b)(2) and (c). Indeed, Diaz's periodic supervision reports contain a list of the dates Diaz failed to report to his probation officer,

9 N.Y.C.R.R. §348.3. These records will provide Collins with the factual basis to identify the numerous filings defendants improperly sealed.

2.   The records are relevant because they are the only available documentary evidence of certain sealed records' existence. King at 195 ("...[I]f the government cannot show that information of comparable quality is as efficiently available from alternative sources, this factor should weigh in favor of disclosure."). As evidenced by defendants' December 7, 2004 motion to dismiss, defendants have taken the position -albeit erroneous- that no post-1993 court records were generated in Diaz (Exhibit F at ¶19). They will necessarily take this position in response to any demand to produce and the subpoenaed records thus represent the only source to obtain this documentary evidence. Cf., King at 195 ("Because the materials sought are in the possession of the defendant ... the court should err on the side of wider discovery."). Notably the NYCDOP **does not** claim records regarding Diaz's violation of probation are not in its possession.

3.   The records are relevant because they will provide Collins with the factual predicate to invoke the presumption of "official regularity" under Fed.R.Evid. 301 to establish the NYCDOP filed numerous post-1993 records in Diaz.  Wright and Graham, Federal Practice and Procedure, Evidence §5125 at p.596; Nash v. Estelle, 597 F.2d 513, 518 (5th Cir. 1979)(courts presume officials have properly discharged duties imposed upon them by law); Boissonnas v. Acheson, 101 F.Supp 138 (S.D.N.Y. 1951)(same). Presumptions under Rule 301 "are given the effect of placing upon the opposing party the burden of establishing the nonexistence of the presumed fact, once the party invoking the presumption establishes the basic facts giving rise to it." Advisory Committee Notes to Fed.R.Evid. 301. In order to establish a presumption under Rule 301, the proponent must satisfy the court that the presumption exists and that it applies in federal court. Wright and Graham, Federal Practice and Procedure, Evidence §5125 at p.596. The proponent must then establish the basic facts giving rise to the presumption. Id. As demonstrated above, federal law recognizes a presumption that public officials carry out the duties imposed upon them by law. If Collins thus established Diaz failed to comply with the conditions of his probation and that state law mandated the NYCDOP to make certain court filings with respect to Diaz's failure (the basic facts), he would be entitled to a presumption that the NYCDOP properly made those filings with the court (the

13

presumed fact), and thus that defendants improperly sealed these records as they are not reflected on the Diaz docket sheet (Exhibit B). The subpoenaed records will reflect the fact that Diaz did not comply with the conditions of his probation. Diaz failed to report to his probation officer as required, changed his address without notifying the NYCDOP, failed to obtain gainful employment, failed pay his fine as required by the court, and failed to attend the drug treatment program as required by the special condition of his probation (Exhibits A and D); People v. Offley, 210 A.D.2d 262 (2d Dep't 1994)(defendant violated probation by committing cited acts). The NYCDOP's regulations required it to inform the court of these violations and to commence proceedings to bring Diaz into compliance, each of which required court action. 9 N.Y.C.R.R §352.3 ("It is the Probation Department's responsibility to see that the conditions of probation are properly enforced and to inform the court of any significant deviation.") 9 N.Y.C.R.R. §352. 1 (b)(requiring the NYCDOP to notify the court "within seven business days of the probation department's knowledge of [a] significant violation.") 9 N.Y.C.R.R. §352.1 (c)(requiring the director of the NYCDOP to notify the court of a probationer's failure to participate in an assigned drug treatment program); NYCDOP Executive Policy and Procedure No. 10-11-85 (requiring the NYCDOP to file with the court "Violation of Probation Specifications" itemizing how and when a probationer violated the conditions of his or her probation). Thus, as the subpoenaed records will establish the basic facts necessary to invoke the presumption of official regularity, they are highly relevant. See, Wright and Graham, Federal Practice and Procedure, Evidence §5125 at p.601 ("Identifying the basic facts of the presumption is significant in that it makes evidence to prove those facts relevant in cases where the relevance might be questionable in absence of the presumption.").

4.   The records are relevant because they will allow Collins to establish the factual basis, documentary and testimonial, relied upon by the Diaz court to modify or continue Diaz's probationary term. Identifying this information is particularly relevant as defendants' failure to disclose it constitutes a blatant violation of Collins' constitutional rights. See, United States v. Snyder, 187 F.Supp.2d 52, 63-64 (N.D.N.Y. 2002)(probation revocation court's reliance upon particular documents in rendering its decision created "strong" presumption in favor of public access to those documents under

14

the First Amendment).

5.   The records are relevant because they will provide Collins with the factual basis to impeach defendants' claims that they did not improperly seal records and do not maintain a dual docketing system. <u>See</u>, Advisory Committee Notes to Rule 26 (b)(1)("...[I]nformation that could be used it impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."); <u>Robinson v. United States</u>, 205 F.R.D. 104, 107 (W.D.N.Y. 2001)(defendant entitled to records that may impeach plaintiff's claim of causation). As demonstrated above, defendants' denials will likely continue unabated until confronted with direct evidence to the contrary.

6.   The records are relevant because they likely contain information identifying the individuals -and thus potential witnesses- who orchestrated the constitutionally offensive sealing. Fed.R.Civ.P. 26 (b)(1)(parties may obtain discovery of "the identify ... of persons having knowledge of any discoverable matter"); <u>Id.</u> ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

7.   The records are relevant because will allow Collins to identify the filings by public officials -here the District Attorney (Motion To Quash at ¶11) apparently requesting leniency with respect to Diaz's violation of the conditions of his probation. Indeed, this court has explicitly held that "[l]etters received from public officials seeking to use their offices to impact a sentence will invariably be disclosed[,]" under the common law right of access to judicial records, <u>United States v. Gotti</u>, 322 F.Supp.2d 231, 251 (E.D.N.Y. 2004), and establishing the existence and sealing of such records would demonstrate a blatant violation of the Collins' and the public's common law right of access. <u>See</u> also, <u>United States v. Corbitt</u>, 1988 WL 94278 (N.D. Ill. 1988)(common law right of access required disclosure of letters court received from public officials urging leniency in the sentencing of a local police chief since the public had "a right to know which representatives used their offices to encourage [the court] to treat [the defendant] leniently-especially since the outpouring of letters influenced the court's decision."); <u>People v. Burton</u>, 189 A.D.2d 532 (3d Dep't 1993)(recognizing a common law right of access to judicial records); <u>Riddell Sports Inc. v. Brooks</u>, 158 F.R.D. 555, 561 (S.D.N.Y. 1994)(fact that particular theory was not

15

actually pled by plaintiff was not fatal to plaintiff's discovery demands concerning documents related to that theory, where demands related to the general subject matter of the litigation and to specific claim that plaintiff might yet assert); 28 U.S.C. §1367 (a)(granting district court supplemental jurisdiction over state law claims).

8.    The records are relevant because they will provide Collins with additional evidence to oppose defendants' motion to dismiss. See, e.g, Sizova v. National Institute of Standards and Technology, 282 F.3d 1320, 1326 (10th Cir. 2002)("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.")(internal citations omitted).

9.    The records are relevant because they will provide Collins with background information on defendants' surreptitious administrative sealing system. See, Advisory Committee Notes to Rule 26 (b)(1)("Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information.").

10.   The records are relevant because they will provide corroborative evidence to establish the trustworthiness of Investigator Daiute's affidavit so as to permit its admission under the residual exception to the hearsay rule. Fed.R.Evid. 807; Parsons v. Honeywell, Inc., 929 F.2d 90 (2d Cir. 1991); and

11.   The records are relevant because they will provide Collins with the factual basis to develop a time line of the NYCDOP's filings with the court and thus a narrative to present to the jury. The records will establish what documents were filed, when they were filed, and whom they were filed with. These facts will be used by Collins to paint a portrait of an ongoing unconstitutional sealing system that operated over the course of the filing and continues to this day.

### ii. The importance of the subpoenaed records to Collins' case

As demonstrated above, the records are not only relevant to Collins' case, they are indispensable. This factor thus weighs in favor of disclosure.

### iii. The strength of Collins' case

Collins' case is extremely strong. He argues defendants maintain secretly sealed records in <u>Diaz</u>. Without the benefit of discovery, Collins has already uncovered evidence of his claims.

For example, defendant Imperatrice claims there "were no additional court records generated [in <u>Diaz</u>] subsequent to [Diaz's] December 15, 1993 sentence date" (Exhibit F at ¶19), and indeed, neither the docket sheet, case jacket, or CRIMS Appearance History reflect any.

But through a private investigator Collins uncovered a non-docketed court decision conclusively establishing (1) subsequent to 1993 a motion was filed in <u>Diaz</u> for a copy of his probation report, (2) an opposition was filed to that motion, and (3) on October 28, 2002 the Honorable Lawrence Knipel granted that motion:

> Motion by defendant <u>pro se</u> to obtain a cop (sic) of his presentence report.
>
> On the papers submitted in support of the motion and the papers submitted in response thereto, it is
>
> ORDERED that the motion is granted.
>
> The foregoing constitutes the decision and order of the Court (Exhibit E).

Neither the motion, opposition, or decision are listed on the <u>Diaz</u> docket sheet, case jacket, or CRIMS Appearance History (Exhibit B). Indeed, according to defendants, these filings do not exist (Exhibit F at ¶19).

These secret or undocketed filings are exactly the type of illegal actions Collins' lawsuit challenges and violate not only Collins' right of

17

access, but the public's as well.  See, e.g., United States v. Valenti, 987 F.2d 708 (11th Cir. 1993)("dual-docketing system can effectively preclude the public and the press from seeking to exercise their constitutional right of access to the transcripts of closed bench conferences."); Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 90 (2d Cir. 2004)("Sealed docket sheets would ... frustrate the ability of the press and public to inspect ... documents, such as transcripts, that we have held presumptively open."). [5]

Similarly, the fact that Diaz's three year probationary term was extended for two years necessarily means there was some type of post-1993 court action in Diaz.  As previously stated, Diaz's probationary term was imposed on December 15, 1993 and set to expire on December 14, 1996 (Exhibit A).  Yet somehow, Diaz's probationary term was extended and did not "max out" until December 14, 1998, two years after its scheduled expiration date (Exhibits C at ¶8 and D).

The only way this could have occurred under New York law was if a declaration of delinquency was filed against Diaz prior to the expiration of his probationary term:

---

[5]    The fact that Collins' private investigator was able to obtain a copy of the decision through his own resources does not excuse defendants' conduct.  Any system which shields court filings from public view but allows access to them only by law enforcement or other favored or similarly situated individuals would be unconstitutional.  See, e.g., Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 86 (2d Cir. 2004).

> When a person has violated the conditions of his probation ... and is declared delinquent by the court, the declaration of delinquency shall interrupt the period of the sentence as of the date of the delinquency and such interruption shall continue until a final determination as to the delinquency has been made by the court pursuant to a hearing held in accordance with the criminal procedure law.

Cf., People v. K.D., 7/29/04 N.Y.L.J. p.19 col.1 (Sup. Ct. Kings County)(noting the sentencing court does not delegate to the NYCDOP the power to impose additional or more severe conditions of probation).

Indeed, C.P.L. §410.60 (5) provides that following such a hearing, the court could "revoke, **continue**, or modify the sentence of probation ...." Thus there was necessarily post-1993 court action in Diaz which is not available to the public and violative of Collins' constitutional rights. [6]

Thus, Collins' case is extremely strong and this factor weighs in favor of disclosure. [7]

---

[6] While Diaz's probationary term was extended to 1998, he was apparently not required to actually report to his probation officer after 1996. P.O. Dawson was Diaz's probation officer from 1993 through 1996 (Exhibit C at ¶4). The NYCDOP computer printout, however, lists Diaz's probation officer as P.O. Karch (Exhibit D). P.O. Karsh likely supervised Diaz's case from 1996 through 1998 after it left P.O. Dawson's hands.

[7] Unfortunately, recent media disclosures indicate the New York City court system's improper sealing of criminal records is not uncommon. Bob Port, Lawyers Rip Release of "Sealed" Records, New York Daily News, July 22, 2003 ("The New has obtained data showing that 3.2 million cases [where defendants pled guilty to violations after being charged with a crime] have been wrongfully sealed in the past 15 years."); Bob Port, New York Defendants' Secrets Exposed, New York Daily News, July 21, 2003 (noting a "staggering number of sealed convictions in city courthouses" and the erroneous belief of "many lawyers, prosecutors, court officers and even judges that sealing was legal.").

### iv. The case's importance to the public interest

"[T]hrough constitutional amendment and national legislation the people have made clear that the policies that inform the federal civil rights laws are profoundly important." Kings v. Conde, 121 F.R.D. at 195 (internal citations omitted). Actions under §1983 require particular attention to full disclosure:

> Each citizen 'acts as a private attorney general who takes on the mantel of the sovereign' guarding for all of us the individual liberties enunciated in the Constitution. Section §1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

King v. Conde, 121 F.R.D. at 195, quoting Wood v. Breir, 54 F.R.D. 7, 10-11 (E.D. Wisc. 1972).

To trump these "powerful public policies", id., confidentiality interests must be "extremely persuasive" and "so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." Id. at 195. The insubstantial confidentiality interest reflected in the state law upon which the NYCDOP relies could never meet this standard.

Moreover, the "powerful public policies" underlying §1983 must be considered conjunctively with the significant public interest issues raised by Collins' lawsuit. See, e.g., Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 90 (2d Cir. 2004)("Sealed docket sheets would ... frustrate the ability of

the press and public to inspect ... documents, such as transcripts, that we have held presumptively open."). These factors thus favor disclosure.[8]

### v. No factors exist disfavoring disclosure

As relevant here, the <u>King</u> court identified two factors disfavoring disclosure: (1) threat to individuals' safety and (2) invasion of individual's privacy. <u>King</u> at 191-194.

As demonstrated above (p.6-8), the NYCDOP failed to set forth any basis to conclude safety or privacy concerns warrant withholding the records. Similarly, it indisputable that Collins' subpoena is not burdensome. As the NYCDOP affirmed, as of January 10, 2005 the "[e]ntire probation records of Adrian Diaz were ordered and delivered" to NYCDOP counsel's office and the NYCDOP can thus easily comply with Collins' subpoena.

---

8        Indeed, many of the documents Collins' subpoena demands are ones explicitly required to be made public by federal and state law. <u>See, United States v. Synder</u>, 187 F.Supp.2d 52 (N.D.N.Y. 2002); C.P.L. §410.10 et. seq. A defendant's conditions of probation must be filed with the court, C.P.L. §410.10 (1); the court's modification or enlargement of the conditions of probation requires defendant's presence in court, C.P.L. §410.20 (1); the court's relaxation of the conditions of probation requires that the court provide the defendant with, and thus file, written notice, C.P.L. §410.20 (1); the court's declaration of delinquency must be filed with the clerk, C.P.L. §410.30; the notice to appear and warrant are filed in court, C.P.L. §410.40 (1) and (2); the defendant must be returned on the warrant or notice "forthwith" before the court, C.P.L. §410.60; the hearing is conducted in open court, <u>People v. Wong</u>, 180 Misc.2d 749 (Sup. Ct. Queens Co. 1999); the court must issue an order following the hearing, C.P.L. §410.70 (5); and even termination of probation requires filings and adjudication, C.P.L. §410.90.

C.   **The NYCDOP's Claim That Collins Failed To Demonstrate The Relevance Of The Subpoenaed Records Is Misplaced**

The NYCDOP final claim is that Collins "failed to show why he wants to see Adrian Diaz's probation records in the first place." (Motion To Quash at ¶14).

But the burden is not on Collins to make an initial showing of relevance. See, In re subpoena issued to Dennis Friedman, 350 F.3d 65, 69 (2d Cir. 2003). Rather, because the NYCDOP moved to quash Collins subpoena, *the burden is upon the NYCDOP to demonstrate the subpoenaed records are not relevant.* See, Burke v. New York City Police Department, 115 F.R.D. 220 (S.D.N.Y. 1987) (if party resists discovery on grounds of lack of relevance, party must satisfy court that requested documents either do not come within broad scope of relevance defined by civil rules or are of such marginal relevance that potential harm occasioned by disclosure would outweigh ordinary presumption in favor of broad disclosure, particularly in suits asserting violations of constitutional rights); Jones v. Hirshfield, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) ("The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant."). [9] Indeed, while Collins' obligation to demonstrate relevance would have been triggered had the NYCDOP sufficiently invoked

---

9     In ¶17 of the NYCDOP's motion to quash, it cites a New York case for the proposition that allowing access to confidential records without a preliminary showing of necessity is improper. But Collins' case is governed by federal, not state law, and that case thus has no application here. Indeed, the proposition of the cited state case is inconsistent with federal discovery law. See, In re subpoena issued to Dennis Friedman, 350 F.3d 65, 69 (2d Cir. 2003).

a claim of privilege (p.5-7), it simply failed to do so.

In any event, as demonstrated above (p.12-16), Collins has amply demonstrated the subpoenaed records are relevant. Thus, the NYCDOP's motion to quash must be denied and the subpoenaed records disclosed.

## D.   Direct Disclosure Of The Subpoenaed Records Is Mandatory

If a party makes no showing of privilege, the court has no choice but order direct disclosure without in camera review. King 121 F.R.D. at 189; Johnson v. McTiue, No. 85-CV-5546, slip op (S.D.N.Y. July 16, 1986)(ordering direct disclosure without in camera review); Martin v. New York City Transit Authority, No. 83-CV-3991, slip op. (S.D.N.Y. October 17, 1983)(same).

Indeed, "[a] showing of need must be made by the [party] before placing the burden of an in camera inspection on the [court]." King v. Conde, 121 F.R.D. at 198; Id. at 196:

> Disclosure of the police officers' interrogatories ... is appropriate, because the defendants have made neither any substantial showing of harm nor presented any reasons at all, beyond the state privilege statute, why discovery should not be ordered. This analysis suggests that the actual personnel records themselves ... might be directly discoverable, instead of passing through in camera review first....

Thus, there is no basis to require submission of the subpoenaed records for in camera review and they must be directly disclosed to Collins.

<u>POINT II</u>

COLLINS' NON-PARTY DISCOVERY SHOULD
NOT BE STAYED PENDING DISPOSITION OF
DEFENDANTS' MOTION TO DISMISS AS (1)
DEFENDANTS' LACK STANDING TO OBJECT
TO COLLINS' NON-PARTY SUBPOENA AND, IN
ANY EVENT (2) THEIR MOTION TO DISMISS IS
PATENTLY FRIVOLOUS.

While drafting his opposition to the NYCDOP's motion to quash, Collins received defendants' January 10, 2005 letter requesting that the court stay discovery pending resolution of its December 7, 2004 motion to dismiss. As the court is aware, the mere filing of a motion to dismiss does not warrant a stay of discovery, <u>United States v. County of Nassau</u>, 188 F.R.D. 187 (E.D.N.Y. 1999), and in any event, defendants' request is legally deficient.

Nevertheless, in light of any possible reservations that may be entertained by virute of defendants' motion to dismiss, Collins demonstrates below that defendants' motion to dismiss is frivolous and his non-party discovery should not be stayed. [10]

──────────────

10    This discussion *is not* meant to serve as Collins' opposition to defendant's motion to dismiss. Collins' opposition to that motion will be filed on or before February 25, 2005 and supplemented with additional evidence, if necessary. <u>See</u>, <u>Sizova v. National Institute of Standards and Technoloy</u>, 282 F.3d 1320, 1326 (10th Cir. 2002.).

A. **Defendants Lack Standing To Seek A Stay Of Collins' Non-Party Discovery**

If a defendant cannot show "any personal right or privilege with respect to the material subpoenaed", he does not have "standing" to object to a subpoena. See, e.g., Brown v. Braddick, 595 F.2d 961 (5th Cir. 1979); David D. Seigal, Practice Commentaries to Fed.R.Civ.P. 45 at p.100 (2004). Thus, an objection, such as a motion to quash, may only be made by a party to whom the subpoena is directed. Smith v. Midland Brake, Inc., 162 F.R.D. 638 (D. Kan. 1995). While this line of case law concerned motions to quash subpoena, it applies with equal force to a defendant's request to stay non-party discovery. Stated, differently, defendants' request to non-party discovery to which they claim absolutely no personal interest is must be summarily rejected. See, e.g., Howard v. Galesi, 107 F.R.D. 348, 350 (S.D.N.Y. 1985)("...[S]ince the Notice of Deposition and accompanying Document Production Request was served upon [a non-party], the defendant cannot realistically claim that he needs protection.").

Nevertheless, even if defendants are deemed to have standing, but see, Howard, 121 F.R.D. at 350 n.2, their motion to stay must still fail pursuant to Lugo v. Alvardo, 819 F.2d 5, 6 (1st Cir. 1987). There, the Court of Appeals held a plaintiff's claim for prospective relief precluded staying discovery pending, as here, resolution of defendants' immunity defenses:

> There are powerful policy reasons why discovery should be halted. Regardless of what happens to the dame claim in this case, the equitable request stand on a different footing.... First, the suspension of discovery proceedings on the equitable claims, solely because of an allegation of qualified immunity, only delays the case unnecessarily,

25

because sooner or later the parties will have the right to engage in discovery as to the equitable claims, irrespective of whether there is a surviving damage action. Even if we overlook considerations of efficient calendar management by the trial court, considerations which obviously are not to be slighted, this discovery should be carried out sooner rather than later, particularly where, as here, there are claims of irreparable injury....

Second, and closely related to the first point, any elimination of 'disruptive' discovery against government officials on a civil rights suit in which both damage and equitable relief are sought would be totally illusory, because in most cases the scope of discovery as to the injunctive claim is practically the same as that involved in proving damages. Even if defendant succeeds in dismissing the damage action, his governmental psyche will presumably be just as 'disrupted' by the remaining discovery procedures. Id. at 7 (internal citations omitted).

Thus, defendants' request to stay discovery based on Harlow v. Fitzegerald, 457 U.S. 800 (1982) must be flatly rejected.[11]

_____

11    Indeed, defendants' request to stay discovery predicated upon Harlow, supra invoked an incorrect standard of review. Because the discovery sought to be stayed was that pertaining to a non-party, defendants were required to demonstrate "good cause" for issue of a protective order prohibiting that non-party discovery. Howard v. Galesi, 107 F.R.D. 348, 350 n.2 (S.D.N.Y. 1985).

Indeed, the NYCDOP is not a defendant in this action, does not seek protection on immunity grounds, and the discovery sought is negligible. As previously stated, on January 10, 2005 all of Diaz's case files were delivered to the office of NYCDOP counsel David H. Yin. There is thus absolutely no burden associated with complying with Collins' subpoena and thus no basis for a protective order.

Accordingly, defendants' attempt to stay Collins' non-party discovery should be rejected on the ground that they lack standing to make such a motion. Nevertheless, as Collins demonstrates below, defendants' asserted defenses, including its claimed immunity, are meritless and cannot legitimately justify a requested stay.

## B.   Defendants' Rule 12 (b)(1) Motion

"Normally, motions to dismiss for lack of [subject matter] jurisdiction pursuant to Rule 12 (b)(1) must be decided before motions pursuant to other Federal Rules of Civil procedure are considered." Liberty Ridge LLC v. RealTech Sys. Corp., 173 F.Supp.2d 129, 134 (S.D.N.Y. 2001).

Under Fed.R.Civ.P. 12 (b)(1), a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient. See, TM Patents, L.P. v. Int'l Bus. Machs. Corp., 121 F.Supp.2d 349, 367-68 (S.D.N.Y. 2000); Peterson v. Continental Airlines, 970 F.Supp.2d 246, 249 (S.D.N.Y. 1997). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting it exists. Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). The asserting party has the burden of proving the court has subject matter jurisdiction by a preponderance of the evidence. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).

Moreover, on a Rule 12 (b)(1) motion, the court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings, J.S. ex rel. N.S. v. Attica Cent. Schools, 386 F.2d 107, 110 (2d Cir. 2004), including affidavits and other evidence, and "no presumptive truthfulness

27

attaches to the complaint's jurisdictional allegations." <u>Guadagno v. Wallack</u>
<u>Ader Levithan Assocs.</u>, 932 F.Supp. 94, 95 (S.D.N.Y. 1996).

Finally, when evaluating a motion to dismiss in connection with a
defendant's request to stay discovery, the plaintiff need not make a
conclusive showing that he will survive the motion. <u>See</u>, <u>Feldman v. Flood</u>,
176 F.R.D. 651, 652-653 (M.D. Fla. 1997)("While it is not necessary for the
Court to, in effect, decide the motion to dismiss to determine whether the
motion to stay discovery should be granted, it is necessary for the Court to
'take a preliminary peek' at the merits of the motion to dismiss to see if it
appears to be clearly meritorious and truly case dispositive.").

### 1.   Defendants' Claim That Collins' Case Does Not Present A Case In Controversy Fails As Collins Has Established The Existence Of Sealed Records

Defendants initially claim Collins' case does not present a case in
controversy because "all documents maintained by the Kings County
Supreme Court in <u>Diaz</u> were provided to" him:

> ...[A]ll of the documents maintained by Kings
> County Supreme Court in <u>Diaz</u> were provided to
> plaintiff ... in response to [his request]. As there are
> no further documents maintained by the court in the
> <u>Diaz</u> criminal matter, to provide to plaintiff or any
> other member of the public, plaintiff has suffered no
> harm and there is no case in controversy to be
> addressed by this Court (Motion to Dismiss at 8-9).

<u>Accord</u>, Exhibit F at ¶19 ("..[T]here were no additional court records
generated subsequent to [Diaz's] December 15, 1993 sentence date.").

As Collins demonstrated above (p.17-19), there are indeed undocketed filings in <u>Diaz</u> that are hid from public view and which defendants "did not" provide him.  In light of this evidence and the factual development available through discovery, Collins has amply established a controversy of sufficient to invoke this court jurisdiction.

2.   <u>**The Rooker-Feldman Doctrine Does Not Bar Collins' Claims As Defendants Have Not Established The Records At Issue Were Sealed By Judicial Decree, Collins Was Not A Party To Diaz, And His Complaint Challenges The Alleged Sealing Orders As Administratively Implemented**</u>

Defendants claim the <u>Rooker-Feldman</u> doctrine bars Collins' claims because they are "inextricably intertwined" with the propriety of the alleged judicial [sealing] order in the underlying criminal proceeding...." (Motion to Dismiss at 15).  Again, defendants' claims are baseless.

First, we simply do not know how the records in <u>Diaz</u> were sealed. Collins alleges the records in <u>Diaz</u> were sealed by administrative fiat or secret judicial decree.  If the records were sealed by the former the <u>Rooker-Feldman</u> doctrine would be inapplicable to Collins' case.

Secondly, even if the records at issue were sealed by court order, the <u>Rooker-Feldman</u> doctrine "is generally not applied to bar a suit by those who were not parties to the original state court action." <u>Hartford Courant Co. v. Pellegrino</u>, 380 F.3d 80, 101 (2d Cir. 2004).  As defendants concede (Motion To Dismiss at 3) Collins was not a party to <u>Diaz</u>, and the <u>Rooker-Feldman</u> doctrine  is thus be inapplicable.

Finally, as Collins' complaint can be read liberally so as to challenge the sealing process as administratively implemented, as opposed to the specific sealing order, his claim is not precluded by the Rooker-Feldman doctrine. See, Hartford Courant Co. v. Pellegrino, 380 F.3d 80, 101 (2d Cir. 2004)("...[W]here plaintiffs do not challenge specific closure orders but rather the sealing process as administratively implemented, Rooker-Feldman does not apply.").

3.   **Collins' Claims Are Not Barred By The Eleventh Amendment As He Does Not Seek Monetary Damages Against Defendants In Their Official Capacities. Moreover, That Amendment Does Not Bar Prospective Relief**

Defendants claim this court lacks subject matter jurisdiction over Collins' claim "for damages against the State defendants in their official capacity because such claims are barred by the Eleventh Amendment...." (Motion to Dismiss at 15). But Collins ***does not seek monetary damages against defendants in their official capacities.*** [1] [2]

Rather, Collins seeks monetary damages solely from Lippman and Imperatrice in their individual capacities, which the Eleventh Amendment does not bar. See, Bad Frog Brewery , Inc. v. New York State Liquor Authority, 134 F.3d 87, 102 (2d Cir. 1998)("The jurisdictional limitation [of the Eleventh Amendment] recognized in [Pennhurst States School &

_____

12   Only declaratory relief was sought against John Does 1-3. 42 U.S.C. §1983 (2003)(precluding injunctive relief against judicial officers in their official capacity unless a declaratory decree was violated or unavailable).

30

<u>Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984)] does not apply to an individual capacity claim seeking damages against a state official, even if the claim is based on state law."); <u>Yorktown Medical Laboratory, Inc. v. Perales</u>, 948 F.2d 84, 88-89 (2d Cir. 1991)(court should look to "the totality of the complaint as well as the course of proceedings" to determine whether damages are sought against a defendant in his official or individual capacity).

In any event, even if Collins had erroneously sought damages from Lippman and Imperatrice in their official capacities, his claims for declaratory and injunctive relief against them are not barred by the Eleventh Amendment and precludes dismissal of this action. <u>See</u>, <u>Davis v. New York</u>, 316 F.3d 93, 101-02 (2d Cir. 2002); Gowins v. Greiner, No. 01 Civ. 6933 (GEL), 2002 WL 1770772, at *3 (S.D.N.Y. July 31, 2002)(collecting cases).

> **4.    As Defendants Have Not Established They Sealed The Records In Dispute Pursuant To Court Order, They Are Not Entitled To Absolute Immunity With Respect To Collins Claim For Monetary Damages. Moreover, The Absolute Immunity Doctrine Is Inapplicable To Collins' Claim For Prospective Relief**

Defendants argue that assuming <u>arguendo</u> a sealing order was issued in <u>Diaz</u>, neither Lippman nor Imperatrice would have the authority to alter or overturn those orders and they would therefore be entitled to absolute immunity (Motion to Dismiss at 18).

First, we simply do not know how the records in <u>Diaz</u> were sealed. Defendants have the burden of establishing their entitlement to absolute

immunity, Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982), and cannot do so without establishing the sealed the records in Diaz were sealed pursuant to court order.

Indeed, if the records were sealed by administrative fiat as Collins alleges, absolute immunity would not shield Lippman or Imperatrice from liability. See, e.g., McCray v. Maryland, 456 F.2d 1, 5 (4th Cir. 1972):

> ...[I]n every instance cited by the District Court where 'judicial immunity' was accorded a court clerk, he was in fact acting regularly and lawfully. McCray here alleges very different circumstances-he asserts that the clerk impeded the filing of his papers. If the claim is true, the clerk was acting in direct violation of his statutory duties. In cases where an official's lawful authority was exceeded or the court order not followed no immunity was recognized and the officer was held liable under section 1983 if his actions abridged an individual's federally protected rights. In the situation alleged by plaintiff in this case, the clerk is entitled to no more protection than any other state ministerial functionary who fails to discharge a mandatory duty (internal footnotes and citations omitted).

Indeed, the Second Circuit has precluded dismissal of claims such as Collins' where the record does not establish the records were sealed by court order. See, Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 97-98 (2d Cir. 2004):

> ...[I]n the face of the threadbare record before us, we are unable to discern whether any documents actually were sealed pursuant to judicial orders or statutes such that the defendants' administrative authority would preclude them from allowing the plaintiffs to access those documents in contravention of judicial or statutory directives. On the one hand, the plaintiffs have not come forward with any evidence suggesting that the documents

were sealed in the absence of such authorities. On
the other hand, the district court apparently
dismissed the action before the plaintiffs had
conducted discovery and the defendants have never
confirmed whether documents were sealed pursuant
to statute of judicial order.

* * *

We therefore vacate the district court's dismissal of
the action and remand the case. Id. at 97-98

Finally, even if the records in Diaz were sealed by court order,
Collins nevertheless pleaded a sufficient claim for prospective relief
against Does 1-3, the Supreme Court Justices who allegedly issued the
sealing orders. See, Levy v. Lerner, 853 F.Supp. 636, 639 (E.D.N.Y.
1994), aff'd, 52 F.3d 312 (2d Cir. 1995)("While the doctrine of judicial
immunity provides that a judge is not liable for damages for acts performed
in the exercise of his or her judicial function, judicial immunity does *not*
bar actions seeking prospective injunctive relief against judicial officers.
Hence the portion of the Amended Complaint seeking declaratory and
injunctive relief against the State Justices may not be dismissed based on
the State Justices' judicial immunity")(Emphasis in original)(internal
citations omitted).

Thus, defendants' claim that absolute immunity shields them and
requires dismissal of Collins' suit must be rejected.

## C.    Defendants' Rule 12 (b)(6) Motion

In considering a motion to dismiss pursuant to Rule 12 (b)(6) the court
should construe a complaint liberally, "accepting all factual allegations in

the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "The admonition not to dismiss assumes greater weight if -as is the case here- the complaint alleges a violation of civil rights." Levy v. Lerner, 853 F.Supp. 636, 639 (E.D.N.Y. 1994), aff'd, 52 F.3d 312 (2d Cir. 1995)

In ruling on such a motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995). Accordingly, dismissal is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. Seet v. Sheahan, 235 F.3d 80, 83 (2d Cir 2000).

### 1.   Collins Sufficiently Pleaded Lippman's Personal Involvement So As To Impose Liability And, In Any Even, Lippman's Personal Involvement Is Not Required For Prospective Relief

Defendants claim Collins failed to adequately plead Lippman's personal involvement in the challenged wrongs so as to state a cause of action.[13]   That claim is ridiculous.

For example, pursuant to Williams v. Smith, 781 F.2d 319 (2d Cir. 1986) Lippman may held liable for actions of his subordinates if he, inter

---

13   Defendants also inexplicably argue Collins failed to sufficiently plead a "conspiracy" claim (Motion to Dismiss at 24).   Collins has never asserted a "conspiracy" claim.

alia, failed to remedy a wrong after learning of the violation, allowed a policy to continue under which the violation occurred, or was grossly negligent in managing subordinates who caused the violations. Id. at 323-324.

Collins' complaint detailed a patently unconstitutional policy by which public records are sealed by administrative fiat (Complaint at ¶¶39-70) and asserted Lippman failed to discontinue this policy after being notified of it (Complaint at ¶¶75-79). Collins further alleged that Lippman was aware of this policy by virtue of his letter to Lippman and Lippman's awareness of "ongoing improper sealing procedures utilized by courts under his authority." (Complaint at ¶¶88; 84; and 86)(p.19 n.7, supra). These allegations amply satisfy the Williams pleading standard.

In any event, even if Collins' allegations against Lippman were insufficient to establish his personal involvement so as to justify an award of monetary damages, Lippman would still be subject to Collins' claims for prospective relief for which personal involvement is not a prerequisite. See, Ramirez v. Coughlin, 919 F.Supp. 617, 623 (N.D.N.Y. 1996)("...[T]he doctrine of personal involvement, like the doctrine of qualified immunity, does not bar either declaratory or injunctive relief...."); Tarafa v. Manio, 897 F.Supp. 172, 173 n.4 (S.D.N.Y. 1995)(noting that "lack of personal involvement is a bar only to a §1983 claim seeking money damages, not to a §1983 claiming seeking injunctive or declaratory relief.")(internal citations

omitted); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)(same).[14]

### D.  Defendants' Rule 12 (c) Motion

Finally, defendants move for judgment on the pleadings under Rule 12 (c). Of course, since defendants have not filed their answer, their motion is premature. See, Taylor v. City of New York, 953 F.Supp. 95, 97 (S.D.N.Y. 1997)(a defendant may not move for judgment on the pleading until after its answer if filed). It should thus be denied.

Nevertheless, some courts construe such motions as ones made under Rule 12 (b), Sinature Combs, Inc. v. United States, 253 F.Supp.2d 1028 (D.C. Tenn. 2003). Indeed, in deciding a motion under Rule 12 (c), the court applies "the same standard ... applicable to a motion under Rule 12 (b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the non-moving party." Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). "The long-standing rule in appraising a complaint's sufficiency is that a claim should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" A.I.D. Express, Inc. v. FedEx Corp., No. 03 Civ. 8087, 2004 WL 2526293, at *2 (S.D.N.Y. Nov. 8, 2004).

---

14    Moreover, as Collins could always seek permission to amend his complaint to include a supplemental common law access cause of action, People v. Burton, 189 A.D.2d 532 (3d Dep't 1993), and hold Lippman liable under the theory of respondent superior.

The Second Circuit has explained that the Rule 12 (c) standard for dismissal "applies with particular strictness where the plaintiff files a <u>pro se</u> complaint alleging civil rights violations," and "has repeatedly warned that 'the pleading requirements in [such] cases are very lenient, even de minimis.'" <u>Deravin v. Kerick</u>, 335 F.3d 195, 200 (2d Cir. 2003); <u>Lerman v. Board of Elections of City of New York</u>, 232 F.3d 135, 142 n.8 (2d Cir. 2000).

Collins has amply demonstrated why his complaint survives a Rule 12 (b) motion and that discussion demonstrates defendants' Rule 12 (c) motion should be denied.  As that discussion is under taken above, it need not be repeated here.  Instead, Collins respectfully refers the court to subparts B and C of this Point for a full discussion on this issue.

* * *

In sum, defendants baseless motion to dismiss provides no basis to stay discovery.  Consistent with the arguments set forth in <u>Point I</u>, the court should order the NYCDOP to comply with Collins' subpoena.

## <u>CONCLUSION</u>

THE NYCDOP'S MOTION TO QUASH COLLINS'
SUBPOENA SHOULD BE DENIED AND IT
SHOULD BE ORDERED TO DISCLOSE THE
SUBPOENAED RECORDS.


JABBAR COLLINS
Plaintiff


January 24, 2005