UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JABBAR COLLINS,

                              Plaintiff,

             -against-

JONATHAN LIPPMAN, individually, and as
Chief Administrative Judge for the New York
City Office of Court Administration; JAMES
F. IMPERATRICE, individually, and as Chief
Clerk of the Criminal Term of the Supreme
Court, Kings County; and JOHN DOES 1-3,
individually, and as Justices of the Supreme
Court, Kings County,

                          Defendants.

------------------------------------------------------------X

04 CV 3215 (FB)(LB)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS HIS COMPLAINT

---

JABBAR COLLINS
95A2646
Plaintiff
P.O. Box 4000
Stormville, New York
12582-0010

February 25, 2005

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

MAR 04 2005

★ BROOKLYN OFFICE ★

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................. 1

POINT I

DEFENDANTS' MOTION TO DISMISS MUST  BE DENIED
AS A MATTER OF LAW ................................................. 2

A.    Standard Of Review- Defendants' Rule 12 (b)(1) Motion    2

B.    Defendants' Jurisdictional Claims Predicated Upon The
      Mootness, Rooker-Feldman, And Quasi-Judicial And
      Eighth Amendment Immunity Doctrines Cannot
      Legitimately Serve As A Basis To Dismiss Collins'
      Complaint ................................................... 3

      1.    The court cannot dismiss Collins' complaint on
            mootness grounds as to do so would require the
            court to resolve factual issues intertwined with
            the merits of his underlying causes of action ........    4

      2.    The court cannot dismiss Collins' complaint on
            mootness, Rooker-Feldman, or quasi-judicial
            immunity grounds as Collins has not been
            afforded limited discovery with respect to the
            factual issues raised by those jurisdictional
            defenses ................................................    5

      3.    Assuming, arguendo, that the court could
            adjudicate defendants' mootness claim, that claim
            must fail as Collins amply establishes a case in
            controversy ...........................................    7

      4.    Imperatrice's affidavit does not undercut Collins'
            showing of a case in controversy ..........................    14

      5.    The Rooker-Feldman doctrine does not bar
            Collins' claims as defendants have not established
            the records at issue were sealed by judicial decree,
            Collins was not a party to Diaz, and his complaint
            challenges the alleged sealing orders as
            administratively implemented ................................    17

6.   Collins' claims are not barred by the Eleventh Amendment as he does not seek monetary damages against defendants in their official capacities.  Moreover, that amendment does not bar prospective relief ............................................................ 18

7.   As defendants have not established they sealed the records in dispute pursuant to court order, they are not entitled to quasi-judicial immunity with respect to Collins' claim for monetary damages.  Moreover, the quasi-judicial immunity doctrine is inapplicable to Collins' demand for prospective relief ...................................................... 19

C.   Defendants' Rule 12 (b)(6) Motion ................................... 21

1.   Collins sufficiently pleaded Lippman's personal involvement so as to impose liability and, in any event, Lippman's personal involvement is not required for prospective relief ................................. 22

D.   Defendants' Rule 12 (c) Motion ........................................ 24

CONCLUSION ................................................................................. 25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

JABBAR COLLINS,                                    :     04 CV 3215 (FB)(LB)
                                                   :
                                    Plaintiff,     :
                                                   :
                    -against-                      :
                                                   :
JONATHAN LIPPMAN, individually, and as            :
Chief Administrative Judge for the New York        :
City Office of Court Administration; JAMES        :
F. IMPERATRICE, individually, and as Chief        :
Clerk of the Criminal Term of the Supreme         :
Court, Kings County; and JOHN DOES 1-3,           :
individually, and as Justices of the Supreme      :
Court, Kings County,                              :
                                                   :
                                    Defendants.    :
                                                   :
--------------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiff Jabbar Collins ("Collins") submits this memorandum in opposition to defendants' December 7, 2004 Rule 12 (b)(1)(6) and (c) motion to dismiss his complaint. The court is respectfully referred to Collins' accompanying affidavit in opposition to that motion for the factual predicate of this memorandum.

<u>POINT I</u>

DEFENDANTS' MOTION TO DISMISS MUST BE DENIED AS A MATTER OF LAW.

A.   <u>Standard Of Review - Defendants' Rule 12 (b)(1) Motion</u>

Under Fed.R.Civ.P. 12 (b)(1) a facially valid complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is insufficient. <u>See, TM Patents, L.P. v. Int'l Bus. Machs. Corp.,</u> 121 F.Supp.2d 349, 367-68 (S.D.N.Y. 2000); <u>Peterson v. Continental Airlines,</u> 970 F.Supp.2d 246, 249 (S.D.N.Y. 1997). Once such a "factual attack" on subject matter jurisdiction is leveled, the burden of establishing jurisdiction rests with the plaintiff, <u>Malik v. Meissner,</u> 82 F.3d 560, 562 (2d Cir. 1996), who has the burden of proving the court has subject matter jurisdiction by a preponderance of the evidence. <u>See, Robinson v. Overseas Military Sales Corp.,</u> 21 F.3d 502, 507 (2d Cir. 1994).[1]

In resolving a "factual attack" on a court's jurisdiction, the court may resolve disputed jurisdictional issues of fact by reference to evidence outside the pleadings, <u>Guadagno v. Wallack</u> 932 F.Supp 94, 95 (S.D.N.Y. 1996), including affidavits and other evidence, and "no presumptive truthfulness attaches to the complaint's jurisdictional allegations."

-------------------------------------

[1]   "Normally, motions to dismiss for lack of [subject matter] jurisdiction pursuant to Rule 12 (b)(1) must be decided before motions pursuant to other Federal Rules of Civil Procedure are considered." <u>Liberty Ridge LLC v. RealTech Sys. Corp.,</u> 173 F.Supp.2d 129, 134 (S.D.N.Y. 2001).

2

<u>Guadagno v. Wallack</u>, 932 F.Supp. at 95 (S.D.N.Y. 1996).   Nevertheless, while a court is permitted to consider affidavits in resolving such a challenge, "[h]earsay statements contained in affidavits may not be considered." <u>Forbes v. State University of New York at Stony Brook</u>, 259 F.Supp.2d 227, 232 (E.D.N.Y. 2003); <u>Kamen v. American Tele. & Tel. Co.,</u> 791 F.2d 1006, 1011 (2d Cir. 1986).   Moreover, unlike a Rule 12 (b)(6) motion, "a 12 (b)(1) motion *cannot* be converted into a Rule 56 motion [for summary judgment]...." <u>Kamen v. American Tele. & Tel. Co.,</u> 791 F.2d at 1011.

**B.**   <u>Defendants' Jurisdictional Claims Predicated Upon The Mootness, Rooker-Feldman, And Quasi-Judicial And Eighth Amendment Immunity Doctrines Cannot Legitimately Serve As A Basis To Dismiss Collins' Complaint</u>

Defendants assert a four prong jurisdictional challenge to this court's ability to adjudicate Collins' claims.   First, defendants contend Collins complaint is moot because they have disclosed "all" records maintained in <u>Diaz</u> (Defendant's Memo. of Law at 7-8).   Secondly, defendants' contend that to the extent that Collins' complaint alleges the records at issue were sealed by court order, the <u>Rooker-Feldman</u> doctrine requires dismissal of his complaint (Defendant's Memo. of Law 13-15).   Third, defendants contend that to the extent that the records at issue were sealed by court order, defendants are entitled to dismissal as their compliance with the court order provides them with quasi-judicial immunity (Defendant's Memo. of Law at 16-18).   Finally, defendants contend they are entitled to dismissal under the Eighth Amendment as Collins' complaint purportedly

3

seeks monetary damages against them in their official capacities (Defendants' Memo. of Law at 15-16). Each of these arguments fail on procedural and substantive grounds.

**1.   The court cannot dismiss Collins' complaint on mootness grounds as to do so would require the court to resolve factual issues intertwined with the merits of his underlying causes of action.**

Collins' lawsuit challenges defendants' maintenance of a "dual docket sheet" and "surreptitiously sealed records" in <u>Diaz</u>. Collins primarily asserts the records in <u>Diaz</u> were sealed pursuant to defendants' unconstitutional policy which permitted sealing of court records merely at the request of favored attorneys or other influential individuals.

In response to these assertions, defendants argue they do not maintain the sealed records and thus Collins' complaint -at least to the extent it seeks prospective relief- must be dismissed:

> Plaintiff ... fails to present an actual case or controversy [as] all of the documents maintained by the court in <u>Diaz</u> were provided to plaintiff.... As there are no further documents maintained by the court in the <u>Diaz</u> criminal matter, to provide to plaintiff or any other member of the public, plaintiff has suffered no harm and there is no case or controversy to be addressed by this court. There is no meaningful remedy this court can issue in this case. Any relief provided at this point would be based upon a hypothetical set of facts....Accordingly, this case should be dismissed in its entirety as it is moot." (Defendant's Memo. of Law at p. 8-9).

4

However, because adjudication of that argument requires this court to resolve the factual issues at the very heart of Collins' lawsuit, the court is precluded from adjudicating defendants' claim. See, e.g., Lawrence v. Dunbar, 919 F.2d 1525, 1529-30 (11th Cir. 1990)(per curiam)(holding that where jurisdiction is "inextricably intertwined" with the merits of the lawsuit, such that a decision on one would effectively decide the factual issues of the other, a court may not resolve the factual dispute); Keller v. Niskayna Consolidated Fire District 1, 51 F.Supp 223, 226 (N.D.N.Y. 1999)(while a court may decide disputed factual issues, it may do so only if "those issues are sufficiently independent of the merits of plaintiff's underlying allegations."), citing Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991). Accordingly, Collins' complaint cannot be dismissed on mootness grounds. [2]

**2.    The court cannot dismiss Collins' complaint on mootness, Rooker-Feldman, or quasi-judicial immunity grounds as Collins has not been afforded limited discovery with respect to the factual issues raised by those jurisdictional defenses.**

A court is precluded from dismissing a complaint on jurisdictional grounds if the plaintiff has not been provided with limited discovery on disputed jurisdictional fact issues. See, William v. Casey, 657 F.Supp 923 (S.D.N.Y. 1987):

---

[2]    As previously stated, nor can these factual issues be resolved by conversion as the court is precluded from converting defendants' Rule 12 (b)(1) motion into one for summary judgment. See, Kamen v. American Tele. & Tel. Co., 791 F.2d 1006, 1010 (2d Cir. 1986).

5

"As general rule, before dismissing a suit for lack of jurisdiction courts will allow limited discovery going to the issue of jurisdiction. <u>Kamen v. American Tele. & Tel. Co.,</u> 791 F.2d 1006, 1011 (2d Cir. 1986). Dismissal without allowing plaintiff any opportunity to conduct reasonable discovery has been held to be an abuse of discretion."

<u>Accord, Filus v. Lot Polish Airlines,</u> 907 F.3d 1328, 1332 (2d Cir. 1990)("...[G]enerally a plaintiff may be allowed limited discovery with respect to the jurisdictional issues[.]"); <u>Siov v. National Institute of Standards and Technology,</u> 282 F.3d 1320, 1316 (10th Cir. 2002)("When defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion[]" and "a refusal to grant discovery constitutes an abuse of discretion, at least, where the facts upon which discovery is sought are peculiarly within the defendants' control.") Such is the case here.

It is defendants who possess the sealed records. Indeed, as demonstrated by the October 28, 2002 <u>Diaz</u> decision Investigator Parco obtained (Exhibit F), there are indeed additional records in <u>Diaz</u> that are not reflected on its docket sheet or case jacket. Moreover, without permitting limited discovery in this action, it is impossible to assess the applicability of defendants' asserted defenses.

For example, defendants' invoke quasi-judicial immunity and the <u>Rooker-Feldman</u> doctrine, the latter of which prohibits a federal court from serving as an appellate court for state court judgments. <u>Hartford Courant Co. v. Pellegrino,</u> 380 F.3d 80, 101 (2d Cir. 2004). However, it is impossible to determine at this point whether the records in <u>Diaz</u> were

6

sealed by a court order, and thus impossible to determine the applicability of those doctrines to Collins' case. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982)(defendants have the burden of establishing their entitlement to immunity).

Accordingly, as limited discovery has yet to be had, Collins' complaint may not be dismissed on jurisdictional grounds.[3] Cf., Guadagno v. Wallack, 932 F.Supp. 94, 95 (S.D.N.Y. 1996)("Finally, while the Court may resolve a factual dispute over jurisdiction at the time the motion is filed, it also has the discretion to defer final determination of the dispute until the time of trial, Fed.R.Civ.P. 15(d), thus preserving judicial resources.")(internal citations omitted).

### 3.   Assuming, arguendo, that the court could adjudicate defendants' mootness claim, that claim must fail as Collins amply establishes a case in controversy

Defendants claim that Collins' case does not present a case in controversy is grounded upon defendant James F. Imperatrice's November 30, 2004 affidavit (Exhibit G). There, Imperatrice declares "[t]he Supreme Court has willingly provided all the documents maintained in Diaz, i.e., the

---

3    Any jurisdictional discovery permitted in this case should include Collins' November 24, 2004 subpoena duces tecum served upon the NYCDOP. Collins' January 24, 2005 memorandum of law opposing the NYCDOP's motion to quash that subpoena and his January 27, 2005 objections to Judge Bloom's January 21, 2005 order quashing it amply demonstrate the records are critical to this action and the order quashing it was clearly erroneous and contrary to law.

docket sheet and the case jacket...." (Exhibit G at ¶20).[4] While there are ample reasons to reject Imperatrice's claim (see, subpart 4, infra) five items of evidence Collins has developed thus far easily establish a case in controversy:

>    i.    **The October 28, 2002 Decision Establishes The Existence Of Sealed Records.** Through Investigator Parco Collins uncovered a non-docketed October 28, 2002 court decision in Diaz conclusively establishing (1) subsequent to December 1993 a motion was filed in Diaz for a copy of his probation report, (2) an opposition was filed to that motion, and (3) on October 28, 2002 the Honorable Lawrence Knipel granted that motion (Exhibit F). Shereck v. Hagan, 135 F.Supp 293 (D.C.N.D. 1955)(recitals in an order are presumptive evidence of their truthfulness and if uncontradicted, conclusive). Neither the motion, opposition, or decision are listed on the Diaz docket sheet. Indeed, according to Imperatrice, these filings do not exist (Exhibit G at ¶19). These secret or undocketed filings are exactly the type of actions Collins' lawsuit challenges and the type of actions that violate the public's right of access to judicial records. See, e.g., In re Providence Journal Co., 292 F.3d 1, 10-13 (1st Cir. 2002)(holding that court's blanket policy of refusing to file memoranda of law that attorneys were required to submit in connection with motions violated the First Amendment); United States v. Valenti, 987 F.2d 708 (11th Cir. 1993)("dual-docketing system can effectively preclude the public and the press from seeking to exercise their constitutional right of access...."); Hartford Courant Co. v. Pellegrino, 380 F.3d 80 (2d Cir. 2004)("Sealed docket sheets would ... frustrate the ability of the press and public to inspect ...

---

4    This is the only relevant declaration in Imperatrice's affidavit that may be considered in determining whether Collins establishes a case in controversy. As discussed in subpart 4, infra, the only other relevant declaration in Imperatrice's affidavit is double hearsay that cannot be considered in deciding this motion. See, Forbes v. State University of New York at Stony Brook, 259 F.Supp.2d 227, 232 (E.D.N.Y. 2003)("Hearsay statements contained in affidavits may not be considered."), citing, Kamen v. American Tele. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

documents...."). Nor is there any bar to considering the October 28, 2002 decision in connection with this motion. This court may take judicial notice of the decision, <u>Greene v. WCI Holding Corporation</u>, 956 F.Supp. 509 (S.D.N.Y 1997), <u>aff'd</u> 136 F.3d 313 (2d Cir. 1998), it is admissible as a "public record" for purposes of Fed.R.Evid. 803 (8)(A), G. Weissenberger, Weissenbenger's Federal Evidence §803.42, admissible as a party-opponent admission, M. Graham, Federal Practice and Procedure: Evidence 7022 p.206 ("...[A] party's books or records are usable against him without regard to intent to disclose to third parties."), and admissible under Fed.R.Evid. 807's residual exception to the hearsay rule.

ii.    **Defendants' Concession To ¶¶20-38 Of Collins' Complaint Establishes The Existence Of Sealed Records.** ¶¶20-38 of Collins' verified complaint specifically alleged that (1) following Diaz's sentence to probation, the NYCDOP designated Diaz "Amber" which called for intensive supervision, (2) sometime after December 1993 Diaz violated the conditions of his probation by failing to report to his probation officer, changing his address without notifying the NYCDOP, leaving the NYCDOP's jurisdiction, failing to obtain gainful employment, and failing to pay the fine mandated by the court, (3) the NYCDOP filed numerous documents with the Kings County Supreme Court regarding those violations, (4) the court took action on the NYCDOP filings by modifying, mooting, withdrawing, or sustaining the violation, and (5) defendants extant policy permits sealing of such court records. [5] Defendants have never disputed these allegations and have thus conceded them. See, <u>E.E.O.C. v. Rotary Corp.</u>, 164 F.Supp 306, 309 (N.D.N.Y. 2001)(While no presumptive truthfulness attaches to a complaint's jurisdictional allegations when a factual attack on jurisdiction is raised, all "uncontroverted factual allegations are accepted as true."); <u>Cedars-Sinai Medical Center v. Watkins</u>, 11 F.3d 1573, 1583 (Fed. Cir. 1993)(same). Nor does Imperatrice's claim that defendants do not "maintain" sealed records in <u>Diaz</u> dispute Collins' assertions as Collins specifically asserted defendants "moot[ed]" or "withdr[ew]" the probation violation proceedings.

---

5    Notably, the fact that the NYCDOP made court filings regarding Diaz's probation violation is also established by the NYCDOP's
(continued...)

iii. **The Presumption Of Official Regularity Under Fed.R.Evid. 301 Establishes The Existence Of Sealed Records.** The presumption of official regularity presumes government officials have properly discharged their duties. See, <u>Nash v. Estelle</u>, 597 F.2d 513, 518 (5th Cir. 1979)(courts presume officials have properly discharged duties imposed upon them by law); Wright and Graham, Federal Practice and Procedure: Evidence §5125 at p.596 (same). As demonstrated above, defendants concede Diaz violated the conditions of his probation. Based on Diaz's violations, his use of marijuana only three weeks after being placed on probation, and his failure to attend his assigned drug treatment program (Exhibit C at p.1; 4), the NYCDOP was legally obligated to make various court filings regarding Diaz's failure to comply with his probationary term. See, 9 N.Y.C.R.R. §352.3 ("It is the Probation Department's responsibility to see that the conditions of probation are properly enforced and to inform the court of any significant deviation."); 9 N.Y.C.R.R. §352.1 (c)(requiring the director of the NYCDOP to notify the court of a probationer's failure to participate in an assigned drug treatment program); NYCDOP Executive Policy and Procedure ("NYCDOP EPAP") 10-4-85 (requiring the NYCDOP to initiate violation of probation proceedings when its objective is to seek revocation and incarceration); NYCDOP EPAP 10-11-85 (requiring the NYCDOP to file "Violation of Probation Specifications" itemizing how and when a probationer violated the conditions of his or her probation).[6] Thus, based on Diaz's violations and

---

(...continued)5

January 10, 2005 motion to quash Collins' November 24, 2004 subpoena duces tecum (Exhibit I). Collins' subpoena demanded production of, <u>inter alia</u>, (1) all documents the NYCDOP forwarded to the Kings County Supreme Court subsequent to December 1993 and (2) all documents regarding "any proceeding concerning Diaz's violation of probation...." (Exhibit H). The NYCDOP did not claim it did not possess these records. Instead, it merely claimed Diaz's probation records were confidential and disclosure could endanger Diaz's life or invade the privacy of third parties. Exhibit I at 2-3.

6      NYCDOP EPAPs 10-4-85 and 10-11-85 are annexed as Exhibit J.

the applicable law, a presumption arises under Fed.R.Evid. 301 that the NYCDOP made such court filings. This presumption "not only satisfies [Collins'] burden of going forward but also shifts that burden to the defendant[s]. The defendant[s] then must rebut the presumption to satisfy [their] burden of going forward. If the defendant[s] fail to introduce sufficient evidence to rebut the presumption, [Collins] might prevail on the strength of the presumption." Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988); Wright and Graham, Federal Practice and Procedure: Evidence §5125 at 596. The presumption thus independently satisfies Collins' burden of establishing by a preponderance of the evidence that a case in controversy exists.

     iv.    **NYCDOP Supervisor Rosa Wilson's November 19, 2003 Declaration And The NYCDOP's Artsface Sheet Establish The Existence Of Sealed Records.** Wilson's November 19, 2003 declaration that Diaz's probationary "maxed out" on December 14, 1998, and the NYCDOP Artsface Sheet indicating the same, also establish the NYCDOP commenced violation of probation proceedings against Diaz and thus generated numerous court records which are not reflected on the public docket sheet.[7] C.P.L. §410.10, et. seq. (mandating various court filings and actions with respect to a violation of probation proceeding). As discussed in Collins' affidavit opposing defendants' motion to dismiss, Diaz's probationary term was imposed on December 15, 1993 and set to expire three years later on December 14, 1996 (Exhibit A). Yet Wilson's declaration and the NYCDOP Artsface Sheet establish Diaz's probationary term was extended to December 14, 1998, two years after its scheduled expiration date (Exhibits E at ¶8 and C

---

     7     Wilson's November 19, 2003 declarations and the NYCDOP Artsface Sheet are admissible under Fed.R.Evid. 807's residual exception to the hearsay rule. Fed.R.Evid. 807 "permits the admission of hearsay if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interest of justice; and (v) its proffer follows adequate notice to the adverse party." United States v. Bryce, 208 F.3d 346, 350 (2d Cir. 1999)(as amended March 7, 2000). Wilson's declarations satisfy this standard. First, Wilson's declarations are particularly trustworthy as she is an NYCDOP supervisor
(continued...)

at 1). The only way this could occur under New York law was if the court declared Diaz delinquent and subsequently resolved the declaration of delinquency, thereby tolling the intervening period between the declaration of delinquency and its resolution. See, P.L. §65.12 (2); C.P.L. §410.30 (filing of declaration of delinquency tolls the running of the probationary period); People v. Gonzalez, 12/23/04 N.Y.L.J. p.19 col.3 (Sup. Ct. Sullivan County)("Once the violation of probation was

_____

(continued...)7

and had absolutely no reason to lie. Her statements were made in the course of an interview with a licensed private investigator and, upon information and belief, NYCDOP regulations prohibited Wilson from making false statements. Moreover, while Wilson is presently unavailable to Collins due to the stay of discovery entered in the case, she is fully available to defendants. Indeed, as evidenced by defendants' possession of the NYCDOP Artsface Sheet, defendants conferred with the NYCDOP prior to makings their motion and can verify Wilson's statements by interviewing her themselves. Additionally, the trustworthiness of Wilson's declarations is supported by (1) the presumption of official regularity discussed above, (2) the NYCDOP's concession regarding Diaz's violation of probation (p.9 n.5), and (3) defendants' concessions as discussed above. As to the second prong, Wilson's statements obviously bear on a material fact: whether Diaz violated probation and thus whether the NYCDOP made court filings in the case subsequent 1993. Third, due to the stay of discovery issued in the case, Wilson's declarations are the most probative evidence available addressing that issue, their admission is consistent with the rules of evidence, and admission advances the interest of justice. Finally, by a letter dated February 18, 2005 Collins notified defendants that he intended to seek admission of Wilson's declarations under Rule 807. Wilson declarations thus satisfy the standard for admission under Rule 807.

Finally, while the above rationale applies with equal force to the NYCDOP Artsface Sheet, that document is additionally admissible as defendants waived any hearsay objection to it by submitting it in support of their motion to dismiss. See, United States v. Whimpy, 531 F.2d 768, 771 n.4 (5th Cir. 1976)(since defense counsel made no objection, the court "need not confront the ever tedious legal problems in determining whether [the] evidence was hearsay."); M. Graham, Federal Practice and Procedure: Evidence §7009 at p.93 (Interim Ed. 2000).

preponderance of the evidence that his complaint presents a case in controversy.

### 4. Imperatrice's affidavit does not undercut Collins' showing of a case in controversy.

As previously stated, the factual predicate of defendants' claim that they do not possess sealed records in <u>Diaz</u> is defendant James F. Imperatrice's November 30, 2004 affidavit (Exhibit G). While Imperatrice ostensibly submitted that affidavit to "refute [Collins'] claims that the clerks (sic) office maintains 'dual docket sheets' or 'surreptitiously sealed records'" regarding <u>Diaz</u> (Exhibit G at ¶2), it fails miserably in that regard.

First, Imperatrice never swears that violation of probation proceedings were not filed against Diaz. Nor does he swear that the sealed records do not exist. Instead what he does swear *is simply what he told Collins and another inmate* regarding <u>Diaz</u> (¶¶4-11; ¶¶13-19). Moreover, Imperatrice never swears the representations he made to Collins' or the other inmate were truthful. Those allegations in Imperatrice's affidavit thus amount to nothing more than an incomplete chronology of Imperatrice's correspondence regarding <u>Diaz</u>, a far cry from a straightforward affirmative declaration that the sealed records do not exist.

Second, while Imperatrice's affidavit recounts (1) a supposed conversation Court Clerk Specialist Clifford Donadio had with NYCDOP Supervisor Wilson, (2) a purported statement Donadio allegedly made to Imperatrice that Diaz did not violate the conditions of his probation, and (3) that the information another inmate received was incorrect, these

14

statements are pure hearsay and cannot be considered on this motion. See, Forbes v. State University of New York at Stony Brook, 259 F.Supp.2d 227, 232 (E.D.N.Y. 2003)(when ruling on a Rule 12(b)(1) motion, "[h]earsay statements contained in affidavits may not be considered."), citing, Kamen v. American Tele. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).[8]

Finally, even Imperatrice's qualified statement that the Supreme Court provided Collins with "all" records maintained by the Court in Diaz fails (Exhibit G at ¶20). Imperatrice qualifies his declaration in that regard by specifically identifying the documents he refers to as "all" of the documents in Diaz:

> "The Supreme Court has willingly provided all of the documents maintained by the Court in Diaz, i.e., the docket sheet, and the case file jacket which plaintiff acknowledges receipt and possession therefore. See, Complaint ¶¶39-54."

---

8   Even aside from these hearsay problems, there are two compelling reasons to reject the statements attributed to Donaido. First, while Imperatrice claims Donaido spoke to Wilson, he carefully avoids identifying the source of the purported information supposedly given to Donadio. Id. ("Donadio informed me that Mr. Diaz did not violate the conditions of his probation, and that the information Mr. Porter received was due to a clerical error.").

Secondly, Imperatrice's claim that Donadio contacted the NYCDOP and spoke with Supervisor Wilson regarding Diaz's violation of probation is highly questionable in light of Imperatrice's prior inconsistent statement that it was he, not Donadio, who contacted the NYCDOP and spoke with Wilson (Exhibit N, Imperatrice's September 14, 2004 letter to Collins, at ¶3)("Upon receiving a similar request from Mr. Porter earlier this year, *I contacted Rosa Wilson*, a supervisor in the Department of Probation, to clarify the situation with regard to a violation of probation in this (...continued)

Imperatrice's qualified declarations ***do not*** address the records relating to Diaz's violation of probation and the post-1993 occurrences in that case. Moreover, even if Imperatrice's declaration could be read to address those records, it would be conclusively impeached by (1) the October 28, 2002 <u>Diaz</u> decision (Exhibit F) obtained by Investigator Parco, (2) the NYCDOP's concession that the violation of probation records exist (p.9 n.5) and (3) Supervisor's Wilson's November 19, 2003 declaration and the NYCDOP Artsface Sheet (Exhibits E and C). Thus, Imperatrice's affidavit cannot legitimately undercut Collins overwhelming showing of a case in controversy.

---

(...continued)8

case.")(Emphasis added). Imperatrice's letter is admissible against him as a prior inconsistent statement. Fed.R.Evid. 801 (c); <u>United States v. Grant</u>, 256 F.3d 1146, 1156 (11th Cir. 2001); <u>United States v. Graham</u>, 858 F.2d 986, 900 n.5 (5th Cir. 1988).

5.   **The Rooker-Feldman doctrine does not bar Collins' claims As defendants have not established the records at issue were sealed by judicial decree, Collins was not a party to Diaz, and his complaint challenges the alleged sealing orders as administratively implemented**

Defendants claim the Rooker-Feldman doctrine bars Collins' claims because they are "inextricably intertwined" with the propriety of the alleged judicial [sealing] order in the underlying criminal proceeding...." (Defendants' Memo. of Law at 15). Again, defendants' claims are baseless.

First, we simply do not know how the records in Diaz were sealed. Collins alleges the records in Diaz were sealed by administrative fiat or secret judicial decree. If the records were sealed by the former the Rooker-Feldman doctrine would be inapplicable to Collins' case.

Secondly, even if the records at issue were sealed by court order, the Rooker-Feldman doctrine "is generally not applied to bar a suit by those who were not parties to the original state court action." Hartford Courant Co. v. Pellegrino, 380 F.3d 80, 101 (2d Cir. 2004). As defendants concede (Defendant's Memo. of Law at 3), Collins was not a party to Diaz, and the Rooker-Feldman doctrine is thus inapplicable.

Finally, as Collins' complaint can be read liberally so as to challenge the sealing process as administratively implemented, as opposed to the specific sealing order, his claim is not precluded by the Rooker-Feldman doctrine. See, Hartford Courant Co. v. Pellegrino, 380 F.3d 80, 101 (2d Cir. 2004)("...[W]here plaintiffs do not challenge specific closure orders but rather the sealing process as administratively implemented, Rooker-Feldman does not apply.").

17

6.   **Collins' claims are not barred by the eleventh amendment as he does not seek monetary damages against defendants in their official capacities. Moreover, that amendment does not bar prospective relief**

Defendants claim this court lacks subject matter jurisdiction over Collins' claim "for damages against the State defendants in their official capacity because such claims are barred by the Eleventh Amendment...." (Defendants' Memo. of Law at 15). But Collins *does not seek monetary damages against defendants in their official capacities.* [9]

Rather, Collins seeks monetary damages solely from Lippman and Imperatrice in their individual capacities, which the Eleventh Amendment does not bar. See, Bad Frog Brewery , Inc. v. New York State Liquor Authority, 134 F.3d 87, 102 (2d Cir. 1998)("The jurisdictional limitation [of the Eleventh Amendment] recognized in [Pennhurst States School & Hospital v. Halderman, 465 U.S. 89, 100 (1984)] does not apply to an individual capacity claim seeking damages against a state official, even if the claim is based on state law."); Yorktown Medical Laboratory, Inc. v. Perales, 948 F.2d 84, 88-89 (2d Cir. 1991)(court should look to "the totality of the complaint as well as the course of proceedings" to determine whether damages are sought against a defendant in his official or individual capacity).

---

9    Only declaratory relief was sought against John Does 1-3. 42 U.S.C. §1983 (2003)(precluding injunctive relief against judicial officers in their official capacity unless a declaratory decree was violated or unavailable).

In any event, even if Collins had erroneously sought damages from Lippman and Imperatrice in their official capacities, his claims for declaratory and injunctive relief against them are not barred by the Eleventh Amendment and precludes dismissal of this action. See, <u>Davis v. New York</u>, 316 F.3d 93, 101-02 (2d Cir. 2002); <u>Gowins v. Greiner</u>, No. 01 Civ. 6933 (GEL), 2002 WL 1770772, at *3 (S.D.N.Y. July 31, 2002)(collecting cases).

**7.     As defendants have not established they sealed the records in dispute pursuant to court order, they are not entitled to quasi-judicial immunity with respect to Collins' claim for monetary damages. Moreover, the quasi-judicial immunity doctrine is inapplicable to Collins' demand for prospective relief**

Defendants argue that assuming <u>arguendo</u> a sealing order was issued in <u>Diaz</u>, neither Lippman nor Imperatrice would have the authority to alter or overturn those orders and they would therefore be entitled to quasi-judicial immunity (Defendants' Memo. of Law at 18).

First, we simply do not know how the records in <u>Diaz</u> were sealed. Defendants have the burden of establishing their entitlement to absolute immunity, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 812 (1982), and cannot do so without establishing the records in <u>Diaz</u> were sealed pursuant to court order.

Indeed, if the records were sealed by administrative fiat as Collins alleges, quasi-judicial immunity would not shield Lippman or Imperatrice from liability. See, e.g., <u>McCray v. Maryland</u>, 456 F.2d 1, 5 (4th Cir. 1972):

> ...[I]n every instance cited by the District Court
> where 'judicial immunity' was accorded a court
> clerk, he was in fact acting regularly and lawfully.
> McCray here alleges very different circumstances-he
> asserts that the clerk impeded the filing of his
> papers. If the claim is true, the clerk was acting in
> direct violation of his statutory duties. In cases
> where an official's lawful authority was exceeded or
> the court order not followed no immunity was
> recognized and the officer was held liable under
> section 1983 if his actions abridged an individual's
> federally protected rights. In the situation alleged
> by plaintiff in this case, the clerk is entitled to no
> more protection than any other state ministerial
> functionary who fails to discharge a mandatory duty
> (internal footnotes and citations omitted).

Indeed, the Second Circuit has precluded dismissal of claims such as Collins' where the record does not establish the records were sealed by court order. See, Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 97-98 (2d Cir. 2004):

> ...[I]n the face of the threadbare record before us, we
> are unable to discern whether any documents
> actually were sealed pursuant to judicial orders or
> statutes such that the defendants' administrative
> authority would preclude them from allowing the
> plaintiffs to access those documents in
> contravention of judicial or statutory directives. On
> the one hand, the plaintiffs have not come forward
> with any evidence suggesting that the documents
> were sealed in the absence of such authorities. On
> the other hand, the district court apparently
> dismissed the action before the plaintiffs had
> conducted discovery and the defendants have never
> confirmed whether documents were sealed pursuant
> to statute or judicial order.
>
> * * *
>
> We therefore vacate the district court's dismissal of
> the action and remand the case. Id. at 97-98.

20

Finally, even if the records in <u>Diaz</u> were sealed by court order, quasi-judicial immunity would not protect defendants from Collins' demands for prospective relief.  <u>See,</u> <u>Levy v. Lerner</u>, 853 F.Supp. 636, 639 (E.D.N.Y. 1994), <u>aff'd</u>, 52 F.3d 312 (2d Cir. 1995)("While the doctrine of judicial immunity provides that a judge is not liable for damages for acts performed in the exercise of his or her judicial function, judicial immunity does *not* bar actions seeking prospective injunctive relief against judicial officers. Hence the portion of the Amended Complaint seeking declaratory and injunctive relief against the State Justices may not be dismissed based on the State Justices' judicial immunity")(Emphasis in original)(internal citations omitted).

Thus, defendants' claim that quasi-judicial immunity requires dismissal of Collins' suit must be rejected.

## C.   <u>Defendants' Rule 12 (b)(6) Motion</u>

In considering a motion to dismiss pursuant to Rule 12 (b)(6) the court should construe a complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." <u>Chambers v. Time Warner, Inc.,</u> 282 F.3d 147, 152 (2d Cir. 2002). "The admonition not to dismiss assumes greater weight if -as is the case here- the complaint alleges a violation of civil rights." <u>Levy v. Lerner</u>, 853 F.Supp. 636, 639 (E.D.N.Y. 1994), <u>aff'd</u>, 52 F.3d 312 (2d Cir. 1995).

In ruling on such a motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995). Accordingly, dismissal is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. <u>Seet v. Sheahan</u>, 235 F.3d 80, 83 (2d Cir 2000).[10]

**1.   Collins sufficiently pleaded Lippman's personal involvement so as to impose liability and, in any event, Lippman's personal involvement is not required for prospective relief**

Defendants claim Collins failed to adequately plead Lippman's personal involvement in the challenged wrongs so as to state a cause of action.[11]   That claim is ridiculous.

For example, pursuant to <u>Williams v. Smith</u>, 781 F.2d 319 (2d Cir. 1986) Lippman may held liable for actions of his subordinates if he, <u>inter alia</u>, failed to remedy a wrong after learning of the violation, allowed a policy to continue under which the violation occurred, or was grossly negligent in managing  subordinates who caused the violations. <u>Id.</u> at 323-324.

---

10    Defendants' Rule 12 (b)(6) contesting Lippman's personal involvement does not rely on the extrinsic evidence submitted with defendants' motion and thus the motion need not be converted into one for summary judgment.

11    Defendants also inexplicably argue Collins failed to sufficiently plead a "conspiracy" claim (Defendant's Memo. of Law at 24).  Collins has never asserted  a "conspiracy" claim.

Collins' complaint detailed a patently unconstitutional policy by which public records are sealed by administrative fiat (Complaint at ¶¶39-70) and asserted Lippman failed to discontinue this policy after being notified of it (Complaint at ¶¶75-79). Collins further alleged that Lippman was aware of this policy by virtue of his letter to Lippman and Lippman's awareness of "ongoing improper sealing procedures utilized by courts under his authority." (Complaint at ¶¶88; 84; and 86). These allegations amply satisfy the <u>Williams</u> pleading standard.

In any event, even if Collins' allegations against Lippman were insufficient to establish his personal involvement so as to justify an award of monetary damages, Lippman would still be subject to Collins' claims for prospective relief for which personal involvement is not a prerequisite. <u>See</u>, <u>Ramirez v. Coughlin</u>, 919 F.Supp. 617, 623 (N.D.N.Y. 1996)("...[T]he doctrine of personal involvement, like the doctrine of qualified immunity, does not bar either declaratory or injunctive relief...."); <u>Tarafa v. Manio</u>, 897 F.Supp. 172, 173 n.4 (S.D.N.Y. 1995)(noting that "lack of personal involvement is a bar only to a §1983 claim seeking money damages, not to a §1983 claim seeking injunctive or declaratory relief.")(internal citations omitted); <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)(same). [1] [2]

---

12   Moreover, Collins could always seek permission to amend his complaint to include a supplemental common law access cause of action, <u>People v. Burton</u>, 189 A.D.2d 532 (3d Dep't 1993), and hold Lippman liable under the theory of respondeat superior.

## D.  Defendants' Rule 12 (c) Motion

Finally, defendants move for judgment on the pleadings under Rule 12 (c). Of course, since defendants have not filed their answer, their motion is premature. See, Taylor v. City of New York, 953 F.Supp. 95, 97 (S.D.N.Y. 1997) (a defendant may not move for judgment on the pleading until after its answer if filed).  It should thus be denied.

Nevertheless, some courts construe such motions as ones made under Rule 12 (b), Signature Combs. Inc. v. United States, 253 F.Supp.2d 1028 (D.C. Tenn. 2003).  Indeed, in deciding a motion under Rule 12 (c), the court applies "the same standard ... applicable to a motion under Rule 12 (b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the non-moving party." Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). "The long-standing rule in appraising  a complaint's sufficiency is that a claim should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" A.I.D. Express. Inc. v. FedEx Corp., No. 03 Civ. 8087, 2004 WL 2526293, at *2 (S.D.N.Y. Nov. 8, 2004).

The Second Circuit has explained that the Rule 12 (c) standard for dismissal "applies with particular strictness where the plaintiff files a pro se complaint alleging civil rights violations," and "has repeatedly warned that 'the pleading requirements in [such] cases are very lenient, even de minimis.'" Deravin v. Kerick, 335 F.3d 195, 200 (2d Cir. 2003); Lerman v. Board of Elections of City of New York, 232 F.3d 135, 142 n.8 (2d Cir. 2000).

Collins has amply demonstrated why his complaint survives a Rule 12 (b) motion and that discussion demonstrates defendants' Rule 12 (c) motion should be denied. As that discussion is undertaken above, it need not be repeated here. Instead, Collins respectfully refers the court to subparts C and D of this memorandum for a full discussion on this issue.

## CONCLUSION

DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED AND DEFENDANTS ORDERED TO ANSWER COLLINS' COMPLAINT WITHIN TWENTY DAYS FOLLOWING THE ORDER DENYING THEIR MOTION.

JABBAR COLLINS
Plaintiff

February 25, 2005

25