UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| JABBAR COLLINS, | AFFIDAVIT OPPOSING DEFENDANTS' MOTION TO DISMISS |
| Plaintiff, | |
| -against- | |
| | 04 CV 3215 (FB)(LB) |
| JONATHAN LIPPMAN, individually, and as Chief Administrative Judge for the New York City Office of Court Administration; JAMES F. IMPERATRICE, individually, and as Chief Clerk of the Criminal Term of the Supreme Court, Kings County; and JOHN DOES 1-3, individually, and as Justices of the Supreme Court, Kings County, | |
| Defendants. | |

-------------------------------------------------------------X

JABBAR COLLINS, being duly sworn, hereby states the following is true:

1. I am the plaintiff in this action and submit this affidavit in opposition to defendants Jonathan Lippman, James F. Imperatrice, and John Does 1-3's December 7, 2004 motion to dismiss my first amended complaint in this action pursuant to Rule 12 (b)(1)(6) and (c) of the Federal Rules of Civil Procedure.

2. The statements made in this affidavit are based upon personal knowledge and information and belief, the source of the latter being the exhibits annexed to this opposition.



1

## I. DEFENDANTS' MOTION TO DISMISS

3. Defendants move to dismiss the complaint on five grounds. Four of those grounds -mootness, Rooker-Feldman, and quasi-judicial and Eighth Amendment immunity- are jurisdictional in nature. The final ground asserts the complaint fails to sufficiently plead defendant Lippman's personal involvement in the challenged wrongs. Defendants' arguments are meritless.

## II. FACTUAL BACKGROUND

### The Factual Investigation

4. Plaintiff Jabbar Collins ("Collins") is a paralegal employed in Green Haven Correctional Facility's law library. Collins v. Pearlman, 302 A.D.2d 382 (2d Dep't 2003). During the course of various investigations, Collins uncovered irreconcilable discrepancies with the filings in various Kings County court cases, one of which was People v. Adrian Diaz, Information Number 12753/93 ("Diaz"), filed in the Supreme Court, Kings County.

5. On December 15, 1993 Diaz was sentenced to a three year term of probation (a copy of Diaz's December 15, 1993 Conditions of Probation is annexed as Exhibit A).

6. Pursuant to New York Penal Law ("P.L.") §65.15 (2) Diaz's three year probationary term commenced that day (Exhibit A). Absent a violation of probation and a court's declaration that Diaz was delinquent (P.L. §65.12 [2]), Diaz's probationary term expired three years later on December 14, 1996 (Exhibit A)(Collins' First Amended Complaint

2

("Complaint"), annexed as Exhibit B, at ¶21).

7. Once under the New York City Department of Probation's ("NYCDOP") supervision, the NYCDOP designated Diaz "Amber" indicating Diaz was a "high risk" individual and that his probation officer was to exercise increased supervision and monitoring of Diaz while he served his probationary term (Complaint at ¶22).

8. Sometime subsequent to December 15, 1993 Diaz violated several conditions of his probation by, <u>inter alia</u>, failing to report to his probation officer as required, changing his address without notifying the NYCDOP, leaving the NYCDOP's jurisdiction without its approval, failing to obtain gainful employment, and failing to pay his fine as required by the court (Complaint at ¶23). Diaz also violated the conditions of his probation by testing positive for marijuana use on January 6, 1994 and failing to attend a substance abuse program as required by the NYCDOP (a copy of the NYCDOP's Artsface Sheet, reflecting this information, is annexed as Exhibit C).

9. Following Diaz's violations, the NYCDOP commenced violation of probation proceedings against Diaz, filing numerous related documents with the Supreme Court, Kings County (Complaint at ¶¶24-31).

10. That Court subsequently issued a notice to appear, arrest warrant, statements setting forth the conditions of probation Diaz violated, and issued an order orally or in writing, revoking, modifying, continuing, or terminating Diaz's probationary term (Complaint at ¶¶33-37).

11. The <u>Diaz</u> docket sheet, case jacket, and Criminal Records Information Management System ("CRIMS") Appearance History, however,

3

do not list any of these occurrences (a copy of the <u>Diaz</u> docket sheet, case jacket, and CRIMS Appearance History is annexed as Exhibit D). Instead, each of these documents indicate the last occurrence in <u>Diaz</u> was Diaz's failure to pay his fine on February 2, 1994.

12.  Unable to reconcile this discrepancy, in November 2003 Collins retained licensed private investigator Donna M. Daiute ("Daiute") to conduct an investigation regarding the disposition of Diaz's probationary term (a copy of Daiute's December 21, 2004 affidavit is annexed as Exhibit E).

13.  On November 19, 2003 Daiute interviewed Ms. Rosa Wilson ("Wilson"), a supervisor at the Kings County branch of the NYCDOP. Exhibit E at ¶5. Wilson informed Daiute that Diaz's probationary term "maxed out" on December 14, 1998 concluding the NYCDOP's supervision. Exhibit E at ¶8.[1]

14.  Wilson explained to Daiute that Diaz's probationary term was apparently extended as a consequence of a violation of probation. Exhibit E at ¶10. Wilson explained that a conviction for criminal possession of a controlled substance in the 7th degree is a misdemeanor that carries a maximum probation sentence of three years. Exhibit E at ¶9. Diaz, however, remained under NYCDOP supervision for five years. Exhibit E at ¶9.

---

[1] The NYCDOP Artsface Sheet (Exhibit C) bolsters Daiute's findings. Page 1 indicates that while Diaz was not required to report subsequent to 1996, the maximum expiration date ("MED") of his probationary term was December 14, 1998.

15. New York law confirms Wilson's assessment. Under New York law, the only way Diaz's probationary term could extend beyond its December 14, 1996 expiration date was if the court that imposed the probationary term, declared Diaz delinquent and subsequently resolved that declaration thereby tolling the intervening period between the declaration and its resolution. See, e.g., People v. Gonzalez, 12/23/04 N.Y.L.J. p.19 col.3 (Sup. Ct. Sullivan County)("Once the violation of probation was filed, [the defendant's] probationary term was interrupted by the defendant's absconding and the time tolled. He did not receive any credit towards his probationary sentence for the time he was in violation. Thus, from February 23, 1996 through January 14, 2002 he receives no credit on his probationary sentence.").

16. Such a modification or extension of Diaz's probationary term necessarily required court action and the generation of numerous court documents (C.P.L. §410.10, et. seq.).

17. Daiute was unable to obtain any court documentation relating to the extension of Diaz's probationary term. However, another licensed private investigator Collins retained, Vincent Parco, President of Intercontinental Investigations, was able to obtain an October 28, 2002 decision issued in Diaz granting his motion for a copy of his presentence report (a copy of the October 28, 2002 decision is annexed as Exhibit F). Neither that decision or the pleadings upon which it was based are listed on the Diaz docket sheet, case jacket or CRIMS Appearance History (Exhibit D).

18. By a letter dated July 13, 2004 Collins requested a copy of every sealed record held by the Kings County Supreme Court regarding <u>Diaz</u> (Complaint at ¶¶71-74). Defendants refused to disclose the sealed records (Complaint at ¶¶74-79). Indeed, defendants claimed that there were "no ... records generated in <u>Diaz</u> subsequent to [Diaz's] December 15, 1993 sentence date." (November 30, 2004 affidavit of defendant James F. Imperatrice, annexed as Exhibit G, at ¶19).

### Collins' 42 U.S.C. §1983 Complaint

19. On July 27, 2004 Collins commenced the underlying civil rights action pursuant to 42 U.S.C. §1983.

20. First, Collins asserted defendants maintained "dual docket sheets" for <u>Diaz</u> (Collins' verified First Amended Complaint ("Complaint") at ¶¶3-4; ¶¶55-62).

21. The public docket sheet for <u>Diaz</u> lists documents and actions taken in the case that are available for public review. <u>Id.</u> The sealed docket sheet, however, lists documents and actions taken in the case that are covertly sealed and unavailable for public inspection. <u>Id.</u> The sealed docket sheet itself is likewise unavailable for public inspection. <u>Id.</u>; <u>United States v. Gotti</u>, 322 F.Supp.2d 230, 243 (E.D.N.Y. 2004)(Block, J.)(noting this circuit's holding that the public possesses a First Amendment right of access to dockets sheets); <u>Hartford Courant Co. v. Pellegrino</u>, 380 F.3d 83, 96 (2d Cir. 2004)(noting that a "dual docketing system" violated the public's First Amendment right of access to judicial records).

22. Secondly, Collins asserted defendants maintained "surreptitiously sealed records" regarding occurrences in Diaz's case subsequent to February 9, 1994. These records consist of numerous documents filed with the court regarding Diaz's probationary term (Complaint at ¶33; ¶¶39-54), and other matters, (Complaint at ¶71).

23. Collins asserted the records at issue were sealed by administrative fiat, by virtue of "an unwritten policy and/or practice of Imperatrice or his predecessor which allowed such sealing at the mere request of favored attorneys or other influential individuals (Exhibit B at ¶60). Alternatively, Collins alleged that in violation of state and federal law, Imperatrice failed to file the documentation relating to Diaz's violation of probation in the court file so as to prohibit public inspection (Exhibit B at ¶61).

24. Collins alternatively claimed that defendants sealed the records by court order which itself was placed under seal thereby preventing public notice, scrutiny, or challenge (Complaint at ¶¶55-70). Collins argued either method of sealing violated his right of access to judicial documents under the First Amendment, and his right to substantive and procedural due process under the Fifth and Fourteenth Amendments. See, e.g., United States v. Gotti, 322 F.Supp.2d 230, (E.D.N.Y. 2004)(Block, J.)(noting line of Second Circuit case law establishing public's right of access to judicial documents); United States v. Antar, 38 F.3d 1348, 1361 (3d Cir. 1994)(holding court's sealing of transcripts raised "important due process clause issues" and "at a minimum, procedural due process requires that the deprivation of a protected interest be accompanied by notice and an

opportunity to be heard at a meaningful time, and in a meaningful manner.").

### Collins' Subpoena Duces Tecum

25. By a November 24, 2004 subpoena duces tecum Collins demanded that the NYCDOP produce, inter alia, all documents relating to Diaz's violation of probation (Collins' November 24, 2004 subpoena duces tecum, annexed as Exhibit H, at Schedule A, ¶¶5-6).

26. By a motion dated January 10, 2005 the NYCDOP moved to quash Collins' subpoena (a copy of the NYCDOP's January 10, 2005 motion to quash is annexed as Exhibit I). Notably, the NYCDOP **did not claim the records regarding Diaz's violation of probation** did not exist. Instead, the NYCDOP claimed disclosure of the records could endanger Diaz's life or violate the privacy of third parties. Exhibit I at ¶¶2-3.

27. As Collins more fully demonstrates in the accompanying memorandum of law, under the facts of his case, defendants' motion to dismiss must be denied as a matter of law.

WHEREFORE, Collins respectfully requests that this court issue an order (1) denying defendants' motion to dismiss, (2) directing defendants to file their answer to Collins' complaint within twenty (20) days of the Court's decision on this motion, and (3) such further relief as this court deems proper.

Dated: Stormville, New York
February 25, 2005

_____
JABBAR COLLINS

Sworn to before me this
25th day of February, 2005.

_____
NOTARY PUBLIC

PAUL J BRAUN
Notary Public State of New York
Qualified in Dutchess County
Commission # 01BR907????
Commission Expires Dec 23, 2006