

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JABBAR COLLINS,

                  Plaintiff,

      -against-

JONATHAN LIPPMAN, individually, and as
Chief Administrative Judge for the New York
City Office of Court Administration; JAMES F.
IMPERATRICE, individually, and as Chief
Clerk of the Criminal Term of the Supreme
Court, Kings County; and JOHN DOES 1-3,
individually, and as Justices of the Supreme
Court, Kings County,

                Defendants.

------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 04-CV-3215 (FB) (LB)

*Appearances:*
*For the Plaintiff:*
JABBAR COLLINS, *pro se*
#95A2646
Green Haven Correctional Facility
Post Office Box 4000
Stormville, NY 12582-0010

*For the Defendants:*
ELIOT SPITZER, ESQ.
Attorney General of the State of New York
120 Broadway, 24th Floor
New York, NY 10271
By: LISA GHARTEY, ESQ.
Assistant Attorney General

**BLOCK, District Judge:**

        Plaintiff, Jabbar Collins ("Collins"), proceeding *pro se*, brings this § 1983 action

and alleges that the defendants have violated his rights under the First, Fifth and

Fourteenth Amendments by denying him access to docket sheets and other court records.

The defendants move to dismiss the complaint. For the following reasons, the defendant's

motion is granted in part and denied in part.

## I. BACKGROUND

Collins is a prisoner at Green Haven Correctional Facility.   Defendant Jonathan P. Lippman ("Lippman") is the Chief Administrative Judge for the New York City Office of Court Administration.   Defendant James Imperatrice ("Imperatrice") is the Clerk of the Criminal Term of the Supreme Court of the State of New York, Kings County. Defendants John Does 1-3 ("Does 1-3") are unidentified justices of the same court.

Collins alleges that, on July 13, 2004, he requested that Imperatrice provide him with copies of the docket sheet and certain documents filed in *People v. Adrian Diaz*, a criminal case pending before the State court.  Collins is not a party to *Diaz* and his interest in the case is unclear.

Many of the documents that Collins requested were not listed on the docket sheet or contained in the court file.  Collins alleges that those documents were filed under seal and entered on a separate docket sheet that was also filed under seal.  He further alleges that Imperatrice sealed the documents and docket sheet "by administrative fiat," Compl. ¶ 62, and not pursuant to statutory authority or court order.   In the alternative, Collins alleges that Does 1-3 ordered the documents and docket sheet sealed, but did so without adequate justification or prior notice.

Collins alleges that, on July 19, 2004, he wrote to Lippman to complain about the allegedly improper sealings.  In the letter, he asked Lippman "to direct Imperatrice to disclose the sealed records."  Compl. ¶ 77.

Collins alleges that the defendants' actions violated his federal constitutional rights.  He seeks a declaratory judgment that all the documents he requested are "open for

2

public inspection," Compl. at 20, and an injunction requiring Imperatrice and Lippman to provide him with copies of the documents. He also seeks compensatory and punitive damages from Imperatrice and Lippman.

The defendants contend that the reason Collins has not received copies of all the documents he requested is that the allegedly sealed documents and docket sheet simply do not exist. In support of this contention, they have submitted an affidavit from Imperatrice attesting that "[t]he Supreme Court has willingly provided all of the documents maintained by the Court in *Diaz*," Imperatrice Aff. ¶ 20.[1]

## II. DISCUSSION

Under the First Amendment, the public generally enjoys a right of access "to both judicial proceedings and judicial documents." *See United States v. Gotti*, 322 F. Supp. 2d 230, 239 (E.D.N.Y. 2004) (citing *In re New York Times*, 828 F.2d 110 (2d Cir. 1987)). As the Second Circuit recently held, that right includes the right to inspect docket sheets. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004). The right is not absolute, however, and may be overcome "upon demonstration that suppression 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984)).

While conceding the existence of a First Amendment right of access, the

---

[1]The Court cannot consider the factual assertions of Imperatrice's affidavit in ruling on the defendants' motion to dismiss. *See Automated Salvage Transp., Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir. 1998) ("Our consideration [of a motion to dismiss], like the district court's, is limited to facts stated on the face of the complaint[.]"). The Court expresses no opinion as to whether Collins' claims can survive a motion for summary judgment if, after an opportunity for discovery, it appears that the allegedly sealed documents do not, in fact, exist.

defendants argue that the complaint must nevertheless be dismissed.  In essence, they argue (1) that the Court lacks jurisdiction over Collins' claims, (2) that the defendants are immune from suit, and (3) that the complaint fails to state a claim.

## A. Jurisdictional Issues

The defendants' argument that this Court lacks jurisdiction over the case relies on three legal theories: (1) mootness, (2) the Eleventh Amendment and (3) the *Rooker-Feldman* doctrine.

### 1. *Mootness*

"The mootness doctrine, which is mandated by the 'case or controversy' requirement in Article III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties." *See Catanzano v. Wing*, 277 F.3d 99, 107 (2d. Cir. 2001). "Thus, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome,' a case is moot and the federal court is divested of jurisdiction over it." *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486 (1969)).

The defendants argue that the present case is moot because Collins has already received copies of "all of the documents maintained by the Court in *Diaz*." Imperatrice Aff. ¶ 20. Collins, however, disputes that fact. Because of this dispute, the case is not moot.

### 2. *Eleventh Amendment*

The Eleventh Amendment bars a district court from exercising jurisdiction over a suit against a state. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense*

4

*Bd.,* 527 U.S. 666 (1999).  When a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).  When sued in his or her individual capacity, however, "the state official has no Eleventh Amendment immunity." *Id.*  Moreover, the Eleventh Amendment does not prohibit actions for injunctive or declaratory relief against state officials. *See Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (1985) (citing, *inter alia, Ex parte Young*, 209 U.S. 123 (1908)).

Here, Collins seeks damages from Imperatrice and Lippman, whom he has sued in both their official and their individual capacities; the Eleventh Amendment bars the official-capacity claims, but not the individual-capacity claims.   The Eleventh Amendment also does not bar any of Collins' claims for declaratory and injunctive relief.

### 3. Rooker-Feldman

The *Rooker-Feldman* doctrine provides that, "because only the United States Supreme Court may review a final decision of a state court, federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court." *Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 29 (2d Cir. 2003) (citing *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983)).  The defendants argue that the doctrine bars Collins' claims insofar as they ask this Court to undo the alleged orders sealing documents in *Diaz.*

"*Rooker-Feldman* is not generally applied to bar a suit by those who where not

5

parties to the original state court action." *Hartford Courant*, 380 F.3d at 101. Moreover, "where plaintiffs do not challenge specific closure orders but rather the sealing process as administratively implemented, *Rooker-Feldman* does not apply." *Id.* For these reasons, the doctrine does not bar Collins' claims.

## B. Judicial Immunity

The defendants argue that Collins' claims are barred by the doctrine of judicial immunity. Under that doctrine, judges are immune from many suits under § 1983: "[I]f the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction." *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005). By contrast, a judge is not immune when he or she "acted in the clear absence of all jurisdiction," *id.* (quoting *Stump v. Sparkman*, 435 U.S. 349 (1978)), or "if the action in question is not judicial in nature, as when the judge performs an administrative, legislative, or executive act." *Id.*

Judicial immunity bars claims for damages. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). It also bars claims for injunctive relief "unless a declaratory decree was violated or declaratory relief was unavailable." *Id.* (quoting 1996 amendments to § 1983). It does not, however, bar claims for declaratory relief. *See Pulliam v. Allen*, 466 U.S. 522 (1984); *Supreme Court v. Consumers Union, Inc.*, 446 U.S. 719 735 (1980) ("[W]e have never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts.").[2]

---

[2]The 1996 amendments to § 1983 superseded *Pulliam* and *Consumers Union* with respect to injunctive relief. *See Arena v. Dep't of Soc. Servs.*, 216 F. Supp. 2d 146, 154 (E.D.N.Y. 2002).

Does 1-3 are State-court judges and ordering documents to be filed under seal is unquestionably judicial in nature; however, Collins sues Does 1-3 only for declaratory relief. Judicial immunity does not extend to such claims.

Lippman is also a State-court judge; however, he is sued for actions taken as "Chief Administrative Judge for the New York City Office of Court Administration," Compl. ¶ 11, namely, his alleged failure to direct Imperatrice to provide copies of all of the documents requested by Collins. This appears to be an administrative function and, therefore, beyond the scope of judicial immunity.

Imperatrice is not a State-court judge, but rather the clerk of the court. The Second Circuit has not precisely delineated the extent to which judicial immunity extends to a court clerk. *See Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) ("Heretofore, this Court has found it unnecessary to determine whether and to what extent judicial immunity extends to a clerk of the court."). "However, several other circuits have concluded that the same policies underlying immunity for judges also justify a similar grant of immunity to clerks for performance of tasks which are judicial in nature and an integral part of the judicial process." *Id.* (citing cases). At the very least, "when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer,...that officer's immunity is also available to the subordinate." *Id.* (quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992)).

Under *Rodriguez*, if, as Collins alleges, the docket sheet and other documents were sealed pursuant to court orders, the judicial immunity of Does 1-3 would extend to Imperatrice. Whether judicial immunity would also cover Collins' alternative theory that

the sealing took place pursuant to Imperatrice's "administrative fiat" is unclear; however, it is not necessary to decide that issue. Under the "administrative fiat" theory, Collins alleges that Imperatrice sealed the docket sheet and other documents without a court order or statutory authority – in other words, "in the clear absence of all jurisdiction," *Sparkman*, 435 U.S. at 357. For that reason, judicial immunity would not apply.

## C. Failure to State a Claim

The defendants argue that the complaint fails to state a claim against Lippman because it does not allege that he was personally involved in any constitutional violation and, therefore, improperly seeks to impose *respondeat superior* liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Snider v. Dylag*, 188 F.3d 51, 54 (2d Cir. 1999) ("[P]ersonal involvement of the defendant in the conduct that allegedly violates the plaintiff's constitutional rights is generally a prerequisite for liability under a § 1983 claim.").[3] "Personal involvement," however, can be shown in four ways: "A supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (citing *Williams v.*

---

[3]The defendants do not argue that the claims against Lippman are defective in any other respect. Nor do defendants argue that the complaint fails to state claims against Imperatrice and Does 1-3. The Court, therefore, limits its discussion to whether the complaint adequately alleges Lippman's "personal involvement" in a constitutional violation.

*Smith*, 781 F.2d 319 (2d Cir. 1986)).

Here, Collins specifically alleges that he wrote to Lippman to complain about Imperatrice's allegedly unconstitutional actions and to request that Lippman direct Imperatrice to disclose the allegedly sealed documents. He further alleges that Lippman failed to respond to this request. These allegations fall within the second category of "personal involvement" described in *Sealey*.

### III. CONCLUSION

Insofar as Collins seeks damages from the defendants in their official capacities, the motion to dismiss is granted. In all other respects, the motion is denied.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
June 8, 2005

9